EL PUEBLO DE PUERTO RICO y en su representación GUILLERMO ESTEVES, como COMISIONADO DEL INTERIOR DE PUERTO RICO, demandante y apelado, *v.* GIORGETTI & Co., LTD., demandada y apelante.

No. 6109.—*Sometido:* Noviembre 23, 1933.    *Resuelto:* Enero 22, 1934.

*J. H. Brown, C. Ruiz Nazario* y *G. E. González,* abogados de la apelante; *Hon. Procurador General B. Horton* y *M. Rodríguez Serra, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

El demandante en este caso, utilizando el procedimiento sumario de la acción de desahucio, alega que es dueño en pleno dominio de los terrenos denominados Caño o Laguna de los Tiburones; que la demandada, Giorgetti & Co., Ltd., ocupa materialmente, desde hace algún tiempo, una porción de los referidos terrenos que se describe en la demanda; y que la parte demandada detenta, sin título alguno y sin pagar canon o merced al demandante, y contra la voluntad del mismo, la ocupación o posesión material de la parcela referida. La totalidad de la finca denominada Caño de los Tiburones se describe en el hecho tercero de la demanda con una cabida de 4,206.18 cuerdas. La parcela ocupada por la demandada se describe en el hecho cuarto con una cabida de 3,313.18 cuerdas. Solicita la parte demandante que se dicte sentencia declarando con lugar la demanda y ordenando que la demandada desaloje la parcela descrita, y que si no lo hiciere dentro del plazo que le concede la ley, se proceda a lanzar a la demandada de dicha finca por el márshal de la corte.

La demandada excepcionó la demanda sobre la base de que la misma no aduce hechos suficientes para determinar una causa de acción de desahucio a favor del Pueblo de Puerto Rico, y formuló su contestación aceptando el título del Pueblo de Puerto Rico a los terrenos de referencia, admitiendo que la demandada, en la fecha de dicha contestación y desde hacía algún tiempo, está en posesión de la parcela de menor cabida que se describe en dicha demanda, pero alegando que esta posesión data desde octubre 16 de 1925, en virtud de subarrendamiento que le hiciera Manuel Mendía Morales, como administrador judicial de los bienes relictos al fallecimiento de Wenceslao Borda, según escritura de dicha fecha, otorgada ante el notario Clemente Ruiz Nazario, cuyo contrato

fué debidamente autorizado por resolución que dictara la
Corte de Distrito de San Juan en 8 de septiembre de 1925.
Negó la demandada que la ocupación y posesión material de
la parcela referida fuera por ella detentada sin título alguno
y sin pagar canon o merced al demandante, o contra la vo-
luntad del mismo, y por el contrario alegó que dicha deman-
dada estaba entonces en la posesión material de dicha parcela
y tenía derecho a tal posesión hasta el día 15 de octubre de
1935, a título de subarrendamiento que le hiciera Manuel
Mendía Morales como administrador judicial de los bienes
relictos al fallecimiento de Wenceslao Borda, según la escri-
tura antes mencionada, y que Wenceslao Borda antes, y su
sucesión hoy, tuvieron y tienen derecho a la posesión y ocu-
pación material de la finca de 4,206.18 cuerdas, propiedad de
la parte demandante, dentro de cuya cabida figura la parcela
de 3,313.18 cuerdas, a título de arrendatarios del Pueblo de
Puerto Rico, en virtud del contrato de arrendamiento cele-
brado en 15 de septiembre de 1907, entre el Comisionado del
Interior de Puerto Rico y Wenceslao Borda, el cual fué pro-
rrogado en 7 de agosto de 1924 por dicho Comisionado del
Interior, en cumplimiento de las disposiciones de la Resolu-
lución Conjunta aprobada por la Asamblea Legislativa de
Puerto Rico en 11 de febrero de 1908, cuyo contrato de arren-
damiento se encontraba en la fecha de la demanda en toda su
fuerza y eficacia, y su término no había expirado ni expiraría
hasta el 14 de septiembre de 1947. También alegó la deman-
dada que ella ha venido pagando a la parte demandante, por
conducto del Tesorero de Puerto Rico y a nombre de Wen-
ceslao Borda y de su sucesión, todas las contribuciones que,
como cánones de arrendamiento por la finca descrita en el
hecho cuarto de la demanda, han venido fijándose por anua-
lidades vencidas por el Auditor de Puerto Rico, desde julio
1, 1923, hasta la fecha, de acuerdo con las disposiciones de la
sección 3 de la referida Resolución Conjunta de febrero 11,
1908.

Alega especialmente la demandada que El Pueblo de Puerto Rico, con fecha 30 de julio de 1930, promovió una acción ante la Corte de Distrito de San Juan, contra Wenceslao Borda Jr., Joseph W. Borda, Emilia Borda, Sucesión de Wenceslao Borda y Giorgetti & Co., Ltd., admitiendo en la demanda radicada en dicha fecha que Wenceslao Borda, su sucesión, y Giorgetti & Co., Ltd., estuvieron y estaban entonces en posesión de la misma finca que se describe en el hecho tercero de esta demanda de desahucio, y que tal posesión tuvo su origen en un derecho de arrendamiento conferídole por El Pueblo de Puerto Rico a dicho Wenceslao Borda en 15 de septiembre de 1907.

Basándose en las anteriores alegaciones, la demandada sostiene (a) que la acción posesoria está prescrita de acuerdo con el inciso 1°. del artículo 1869 del Código Civil de Puerto Rico; (b) que la acción de desahucio no procede, ya que la demandada ocupa materialmente y posee la finca mediante título, pagando el correspondiente canon o merced; (c) que la corte no puede, en esta acción sumaria de desahucio, anular el título de la demandada, y mucho menos anular el título de la Sucesión de Wenceslao Borda a la posesión de la parcela en controversia, lo cual sólo podría hacerse en la correspondiente acción plenaria dirigida contra todas las partes cuyos derechos habrían de ser perjudicados mediante la anulación de tal título o títulos; y (d) que para dictarse sentencia a favor del demandante en este caso sería imprescindible anular los derechos de la Sucn. de Wenceslao Borda, que no es parte en este pleito, emanados dichos derechos del contrato de arrendamiento de septiembre 15 de 1907, y prorrogado en agosto 7 de 1924, de acuerdo con Resolución Conjunta de febrero 11 de 1908, y que cualquier sentencia así dictada a favor del Pueblo de Puerto Rico, privaría a los herederos de Wenceslao Borda de su propiedad sin el debido procedimiento de ley.

En apoyo de sus alegaciones la demandada ofreció como prueba un contrato celebrado por el Comisionado del Interior

Mr. L. H. Grahame y el Sr. Wenceslao Borda. En este contrato el Comisionado del Interior hace constar que en virtud de la autoridad que le confiere la ley, especialmente la sección 24 del Acta Orgánica de Puerto Rico, aprobada en abril 12, 1900, y el artículo 135 del Código Político de Puerto Rico, arrienda a Wenceslao Borda todos los terrenos pantanosos y no cultivados comprendidos en una parcela de su propiedad, de 6,000 cuerdas más o menos, situada en los distritos de Arecibo y Manatí, conocida con el nombre general de Caño o Laguna de los Tiburones, parte de la cual está cubierta por las aguas. El arrendamiento comprende un período de quince años, contados desde el 15 de septiembre de 1907, hasta el 15 de septiembre de 1922. Fué condición y consideración de dicho contrato que los terrenos o parte de ellos, en lo que fuere practicable, serían desecados, reclamados y puestos en buenas condiciones de cultivo agrícola por parte del Sr. Borda. Fué convenido también entre las partes que se hiciera una mensura completa de todo el territorio denominado Caño o Laguna de los Tiburones, cuyo costo sería sufragado por el Sr. Borda, quien se comprometió a tal efecto a depositar la suma de $1,000 en el Tesoro Insular para cubrir los gastos de la mensura, autorizando al Comisionado del Interior para girar contra ese fondo o contra la parte del mismo necesaria para hacer una mensura completa y levantar los planos de los terrenos. También se convino que el Comisionado del Interior permitiría al Sr. Borda el uso de dicho terreno durante un período de tres años desde la fecha del contrato para hacer experimentos y para construir las obras de drenaje o desecación que el Sr. Borda estimase convenientes con el fin de averiguar si era o no posible reclamar y poner en buen estado de desecación y cultivo los referidos terrenos. Fué también convenido que en el caso de que el Sr. Borda, al terminar los tres años, no consiguiese desecar o reclamar una parte razonable de los terrenos y que no se demostrase la viabilidad de tal proyecto de drenaje, en tal caso el contrato sería cancelado o invalidado por el Comisionado del Interior, con

la aprobación del Consejo Ejecutivo de Puerto Rico. También se convino en el mismo acto que el Sr. Borda comenzaría la labor de investigación y experimentación sobre los terrenos dentro de un plazo de seis meses contados desde la fecha del documento, y que si en el término de doce meses no se hubiese adelantado suficientemente en la investigación y experimentos sobre estos terrenos para determinar si eran o no susceptibles de saneamiento y desecación, que en tal caso el Comisionado del Interior, con la aprobación del Consejo Ejecutivo, cancelaría e invalidaría el convenio. Por último fué convenido por ambas partes que el convenio se presentaría al Consejo Ejecutivo de Puerto Rico para que lo aprobase y que inmediatamente fuese aprobado se consideraría en la plenitud de su vigor.

En 11 de febrero de 1908 se aprobó por la Asamblea Legislativa de Puerto Rico una resolución conjunta autorizando al Comisionado del Interior de Puerto Rico para prorrogar por un término de veinticinco años el contrato de arrendamiento original, con la condición de que dicha prórroga no sería válida a menos que el arrendatario, antes de terminarse los primeros quince años del arrendamiento, hubiera desecado y puesto en condiciones de ser cultivada, no menos de la mitad del área de los terrenos objeto del arrendamiento, con arreglo a mensura oficial de los mismos. Dicha prórroga sólo se entendería aplicable al número de cuerdas que, al finalizar los quince años del arrendamiento primitivo, estuvieran desecadas y en condiciones de cultivo. También se dispuso que al finalizar los quince años primeros de dicho arrendamiento, el terreno cultivado y aquéllos que estuviesen en condiciones de cultivar serían tasados, y sobre el importe de la tasación el arrendatario pagaría la contribución que se determine en la ley.

Se ofreció en evidencia por la demandada y fué admitida por la corte, una comunicación dirigida por el Comisionado del Interior Guillermo Esteves, con fecha 7 de agosto de 1924, al Sr. Wenceslao Borda que dice así:

"Por la presente le notifico que, habiendo resultado de mensura e inspección practicadas por este Departamento en los terrenos pertenecientes a El Pueblo de Puerto Rico, denominados 'Caño o Laguna de los Tiburones', radicados en los términos municipales de Arecibo y Barceloneta, compuestos de 4,206.18 cuerdas, los que fueron cedidos en arrendamiento a usted por el Comisionado del Interior, según contrato de 15 de septiembre de 1907, que 351.15 cuerdas de esos terrenos se encuentran plantadas de caña de azúcar, y las 3,855.03 cuerdas restantes se encuentran saneadas y en condiciones de poderse cultivar, he creído procedente prorrogar, y por la presente prorrogo, el referido contrato de arrendamiento, por un término de veinticinco años, o sea hasta el día catorce de septiembre de mil novecientos cuarenta y siete."

La demandada presentó además como prueba una escritura de 16 de octubre de 1925, otorgada ante el Notario Clemente Ruiz Nazario, en virtud de la cual Manuel Mendía Morales, como administrador judicial de los bienes relictos al fallecimiento de Wenceslao Borda, previa autorización de la Corte de Distrito de San Juan, dió en arrendamiento a la demandada Giorgetti & Co., Ltd., siete parcelas de terreno comprendidas dentro de la finca arrendada a dicho Wenceslao Borda por El Pueblo de Puerto Rico, por un término de diez años y por un canon de $10,000 anuales, pagadero por semestres vencidos, obligándose el arrendatario a pagar todas las contribuciones impuestas sobre los terrenos arrendados. La parcela objeto de este litigio, descrita en la demanda, formaba parte del terreno arrendado a la demandada por el administrador judicial de los bienes del Sr. Borda.

También se ofreció prueba para demostrar que la compañía demandada pagó al Pueblo de Puerto Rico la contribución fijada por el Auditor de Puerto Rico de acuerdo con la sección 3 de la Resolución Conjunta de febrero 11 de 1908.

Por último, la demandada ofreció como prueba el pleito radicado en 30 de julio de 1930 ante la Corte de Distrito del Distrito Judicial de San Juan, por El Pueblo de Puerto Rico contra la Sucesión Borda y otros, y la demanda en la presente acción.

Hemos sido algo extensos en la exposición de los hechos alegados y la prueba presentada y admitida en la corte inferior con el fin de poner de relieve las diversas cuestiones que surgen para su resolución en este procedimiento de desahucio. Varios son los errores atribuídos por la parte demandada y apelante a la corte inferior y en todos ellos se plantean cuestiones dignas de ser estudiadas con detenimiento y atención. Comenzaremos por el quinto señalamiento de error, porque si se llega a la conclusión de que no procede la acción de desahucio en este caso, es innecesario resolver cualquier otra cuestión.

Alega la demandada que la sentencia dictada por la corte inferior es errónea y contraria a derecho en cuanto la misma decreta y concede el remedio de desahucio solicitado por el demandante en la presente acción sumaria, a pesar de haberse planteado por la demandada y sustanciado por su prueba una cuestión de títulos que sólo puede ser ventilada y resuelta mediante una acción plenaria en el curso ordinario de sus procedimientos.

No se discuten en este caso los derechos dominicales del Pueblo de Puerto Rico sobre la parcela poseída por Giorgetti & Co., Ltd. No niega la demandada el título de propiedad de la parte demandante; pero sostiene que posee a título de subarrendataria de la Sucesión Borda, que no es parte en esta acción, y que no procede el procedimiento de desahucio. La parte demandante alega en su demanda que la demandada detenta la ocupación o posesión material de la finca sin título alguno para ello y sin pagar canon o merced al demandante y contra la voluntad del mismo. De acuerdo con la ley, procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros y guardas puestos por el propietario en su finca, y además contra cualquier otra persona que detente la posesión material o disfrute precariamente sin pagar canon o merced alguna. Nótese que se concede el desahucio contra las personas que poseen a nombre del dueño en virtud de un contrato.

y que además la ley ofrece dos modalidades que pueden servir de base a dicha acción: la detentación de la posesión material de la finca sin antecedente contractual, y el disfrute de la misma en precario.

La posesión precaria, según se ha dicho en *Cerra* v. *González*, 29 D.P.R. 289, se origina generalmente por actos de liberalidad, o de mera tolerancia, o por abandono o desconocimiento del propietario. En este último caso manifiéstase ya la· detentación.

Es evidente que la demandada no está poseyendo en este caso por. actos de liberalidad o de mera tolerancia del Pueblo de Puerto Rico.. Su alegado derecho a la posesión surge de un contrato que se dice ha sido celebrado entre la parte demandante y el señor Wenceslao Borda, quien a su vez deriva sus derechos de la propia parte demandante. Esta corte, en el caso de *Roger* v. *López Acosta,* 28 D.P.R. 563, se expresó así:

"La duda que sustentábamos era si este pleito de desahucio era o no de naturaleza precaria. Si lo era, entonces el demandante no tenía derecho a establecer su acción en una corte municipal. De la demanda radicada en la corte municipal, que es lo único que tenemos derecho a considerar, aparece que los demandantes reconocieron y ratificaron un contrato de arrendamiento hecho por otra persona a nombre de dichos demandantes, por término de seis meses y canon de $38 mensuales, pero se negaron a prestar su consentimiento para que fuera prorrogado. Ahora bien, aunque podría presentarse la cuestión de si fué concedida o no una prórroga, o si hubo o no hubo tácita reconducción, en la demanda se alega el hecho de que los demandantes trataban de dar término a un arrendamiento, notificándose a los demandados que dejaran libre y expedita la finca. El demandado basaba su derecho en su carácter de arrendatario y en el pago de una renta estipulada, y como segunda causa de acción alegaba el demandante no haberse pagado la renta. Cuando un arrendatario continúa en la finca arrendada, después de vencido el término, tal posesión·generalmente no es de naturaleza precaria. De otro modo toda tentativa para recobrar la posesión al vencimiento de un arrendamiento podría, a elección del arrendatario, convertirse en precaria y anular así la jurisdicción de la corte municipal.".

De la opinión emitida en el caso de *Cerra* v. *González,* supra, copiamos lo que sigue:

"Y no se diga que el demandado detentaba la posesión material de la finca o la disfrutaba precariamente sin pagar canon o merced alguna, en cuyo concepto, y no en el de arrendatario, es que se ha ejercitado la acción de desahucio. Tal teoría es errónea y no puede sostener la jurisdicción de la Corte de Distrito de San Juan. El demandado lo ha sido como arrendatario y precisamente porque lo era, pagando treinta dólares mensuales, se le dió aviso previo de que el contrato habría de expirar el día último de noviembre de 1920. No quitaba al demandado su carácter de arrendatario el vencimiento del contrato por dicho aviso, como no quita el carácter de arrendatario a un demandado el vencimiento del término estipulado en el contrato. Los efectos legales de la extinción del contrato de arrendamiento por vencimiento del término del contrato o por aviso cuando no se fijó plazo son idénticos y en uno y otro caso debe establecerse la demanda de desahucio ante la corte municipal correspondiente cuando el canon de arrendamiento computado por una anualidad no excede de mil dólares como ocurre en el presente caso. Los conceptos de arrendatario y de poseedor en precario son enteramente distintos y claramente se expresan en la sección 2ª de la ley sobre desahucio. La posesión del demandado se ha originado de un contrato de arrendamiento, y aunque sea ilegal no puede calificarse de precaria."

Tampoco surge de la prueba que la demandada esté detentando la posesión material de la finca dentro del significado en que el verbo "detentar" aparece usado en la Ley de Desahucio. Con respecto a la acepción jurídica de la palabra "detentación", copiamos a continuación lo que dice sobre este particular la Enciclopedia Jurídica Española en el tomo onceno, página 907:

"En el *Diccionario* de Escriche se define la *detentación* como 'la tenencia o posesión de una cosa en nombre de otro', y el sustantivo *detentador,* entendiendo por tal 'el que tiene o posee una cosa en nombre de otro, como el comodatario, depositario y otros, quienes pueden implorar el oficio del juez contra los perturbadores de su detentación.'

"No es éste, sin embargo, el concepto exactamente jurídico, ni siquiera el corriente, de la palabra que sirve de epígrafe al presente

artículo. *Detentación* significa propiamente la tenencia o posesión de una cosa o derecho en sentido gramatical, que no ha de confundirse con la *posesión natural* que define el Código Civil en su artículo 430; siendo de esta posesión natural, y no de la material tenencia, de la que pueden derivarse y se derivan relaciones jurídicas. Y restringiendo más este concepto, suele entenderse por *detentación*, en el lenguaje general y en las leyes, la acción y el efecto de retener uno sin derecho aquello que no le pertenece.

"*Detentare* (como observa con no escasa razón Bekker al quejarse de los defectos de la romana terminología posesoria) y sus derivados *detentio, detentatio, detentador*, son palabras rarísimas; las pocas veces que las encontramos es incidentalmente y con referencia a otras materias, pero nunca con relación exclusiva a la teoría posesoria; *detentator* se encuentra sólo dos veces, y aun en el Código, no en el Digesto. Puede quizá vagamente deducirse que, si bien *detentio* significa el acto de *tenere* y por ello diferente de *possessio, detentatio* y sus demás derivados significan sólo una retención y conservación de una cosa prescindiendo de su justicia, la mayor parte de las veces completamente injusta.''

Estamos de acuerdo con el concepto que merece a la Enciclopedia Jurídica la palabra detentación. La posesión natural crea relaciones jurídicas que no surgen de la posesión estrictamente material. La tenencia natural de la cosa lleva consigo la posesión material, pero ésta puede existir independientemente de la natural. El acto de un intruso, por ejemplo, que se apodera de una cosa es una posesión material que no crea relaciones jurídicas. La retención de una cosa que pertenece a otro, injustamente, sin derecho a tenerla, es lo que a nuestro juicio, constituye detentación dentro del significado de esta palabra tal y como ha sido usada en la Ley de Desahucio.

La posesión de la demandada no está desnuda de fundamento. No puede decirse que se ha apoderado injustamente de lo que no le pertenene y que detente la posesión material de la finca, puesto que está allí como arrendataria o subarrendataria de los causahabientes de la misma persona que, según se alega, se incautó de dicha finca en virtud de un contrato celebrado con el Pueblo de Puerto Rico. A nuestro juicio,

si la demandada no detenta ni posee precariamente y la acción ejercitada no se basa en relación contractual alguna, hay que concluir forzosamente que la prueba no sostiene las alegaciones de la demanda. No es el Pueblo de Puerto Rico, sino la demandada, la que nos dice que está poseyendo en virtud de un contrato, cuya prueba ha sido sometida a la consideración de la corte. La demandante ha querido pasar por encima de todas estas transacciones presentando una demanda en la cual ignora todos los actos por ella realizados, que posiblemente han dado lugar a que la demandada, confiando quizá en la legalidad de los mismos, haya celebrado el alegado contrato que la puso en posesión de la finca objeto del desahucio.

La cuestión planteada en el caso de *Maceira* v. *Pietri et al.*, 30 D.P.R. 587, citado por la corte inferior, no puede compararse con las cuestiones que han surgido en el curso de este litigio. En el caso citado esta corte sostuvo que un arrendador no debe ser privado del derecho de obtener la posesión mediante el procedimiento de desahucio por el hecho de que el arrendatario alegue que existe un contrato de arrendamiento. Alegó y trató de probar el demandado en dicho caso que había celebrado un contrato verbal con el dueño, por conducto de su mandatario. No se probó que el mandatario tuviese autoridad para obligar a su principal, y esta corte, revocando la sentencia del tribunal inferior, decretó el desahucio solicitado. En el presente caso la prueba es documental, auténtica en su totalidad y en su mayor parte compuesta de documentos oficiales, suscritos por el Comisionado del Interior en representación de la parte demandante. La naturaleza de esta prueba y el aspecto jurídico de los puntos en controversia demuestran que no es la acción de desahucio el procedimiento adecuado para estudiar y resolver cuestiones de esta importancia.

En el caso de *Veve* v. *Fajardo Sugar Growers' Ass'n.*, 18 D.P.R. 282, esta corte se expresó así:

"El Tribunal Supremo de España, en sentencia de 2 de diciembre de 1904 dejó consignada la doctrina, de que establecido el juicio de desahucio como procedimiento de reintegrar al dueño de una finca en el pleno ejercicio de sus derechos dominicales, cuando el arrendatario falta abierta y conocidamente a las obligaciones del contrato o cuando haya expirado su término, es preciso, según reiterada jurisprudencia del expresado Tribunal, para el éxito de la acción, que sean de tal naturaleza las relaciones existentes entre arrendador y arrendatario, que se compruebe claramente en el juicio la infracción de las obligaciones pactadas, ya con relación al pago del precio o merced estipulada, ya respecto de cualquier otra obligación relativa a la manera de llevarse la finca arrendada, pues cuando las obligaciones respectivas son de tal naturaleza o tan especiales o tan complejas que no sea racionalmente posible apreciar con exactitud su finalidad y trascendencia, se convertiría el procedimiento sumario del juicio de desahucio en medio de obtener con cierta violencia la rescisión de un contrato sin las garantías de defensa e información que ofrecen los juicios declarativos.

"En otra sentencia del 29 de mayo de 1908 declaró el mismo tribunal que la acción de desahucio sólo es procedente cuando entre el arrendatario y el arrendador o el dueño de la finca y quien la lleva en precario no existen más relaciones jurídicas que las derivadas de dicho carácter, y cuando acerca de ellas no existen dudas fundadas que requieran un examen y discusión propios solamente del juicio declarativo y correspondiente. Aceptamos tal doctrina como buena."

■ Es de notarse que la persona que aparece contratando originalmente con el Pueblo de Puerto Rico, que es una parte realmente interesada, no ha sido incluída como demandada en este litigio. Es verdad que Giorgetti & Co., Ltd., ha podido solicitar el emplazamiento de la Sucesión Borda para proteger sus derechos, pero el hecho de que no haya querido hacerlo no quiere decir que el demandante pueda prescindir de una parte necesaria para resolver las cuestiones que han surgido en este litigio. La demandada deriva sus derechos de la Sucesión Borda y privarla de la posesión del inmueble mediante un fallo en su contra equivale a privar de esa posesión y de sus rentas a la sucesión mencionada. No cabe argüir que si se decreta el desahucio la finca cambiaría simplemente

de posesión, sin afectar los derechos de la Sucesión Borda, en primer lugar porque, como ya hemos dicho, ésta perdería el beneficio de las rentas, y en segundo lugar porque Giorgetti & Co., Ltd., posee a nombre de la sucesión a quien respeta y acata como arrendadora, mientras que la posesión del Pueblo de Puerto Rico, según se advierte de los autos, sería adversa a dicha sucesión. En resumen, un fallo favorable a la demandante privaría a la Sucesión Borda, sin haber sido oída, de la posesión de la finca y su disfrute, es decir, de todo lo que aparece transmitídole por El Pueblo de Puerto Rico en el contrato celebrado en 1907, que se alega fué prorrogado con posterioridad. Estamos hablando en hipótesis. Nada más lejos de nuestro ánimo que entrar en los méritos de las cuestiones que han surgido de las alegaciones y la prueba. Cualquiera que sea el resultado definitivo de los puntos en controversia, fállese el asunto a favor o en contra de la parte demandante, o a favor o en contra de la parte demandada, la verdad es que la Sucesión Borda es una parte necesaria y que es en un juicio plenario donde deben quedar dilucidadas y resueltas las relaciones jurídicas que hayan podido derivarse de las transacciones que han mediado en relación con la finca denominada Caño o Laguna de los Tiburones, entre el Pueblo de Puerto Rico y el señor Wenceslao Borda.

*Debe revocarse la sentencia apelada.*