PURA MARÍA SUÁREZ, demandante y apelante, *v.* RUBÉN BETANCOURT, demandado y apelado.

Núm. 8988.—*Sometido:* Noviembre 9, 1944. *Resuelto:* Enero 25, 1945.

*Angel A. Vázquez,* abogado de la apelante; *Rodrigo Otero Suro,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

En la demanda de desahucio radicada en este caso el 3 de febrero de 1944 en la Corte de Distrito de San Juan se alegó que el demandado "detenta la posesión y ocupa materialmente, sin pago de canon o merced alguna" el inmueble que se describe o sea una casa situada en Santurce. La demanda contiene además las siguientes alegaciones:

"2.—La finca descrita la adquirió la demandante el 16 de diciembre de 1943 y ese mismo día el demandado fué requerido para que tuviera desocupada dicha finca para el 31 de dicho mes de diciembre y, posteriormente, o sea el 13 de enero de 1944, la demandante volvió a requerir al demandado para que tuviera desocupada dicha finca para el día último de enero de 1944; y a pesar de tales requerimientos y de que el demandado mostró su conformidad con dejar expedita dicha finca para las fechas indicadas, dicho demandado continúa en la posesión material del aludido inmueble y se niega en absoluto a desocuparló.

"3.—La demandante habita una casa que no es de su propiedad, ni lo ha sido dentro del año anterior a la radicación de esta demanda, y, de buena fe, tiene necesidad la demandante de recobrar la posesión material de la finca antes descrita para la inmediata ocupación de ese bien por la demandante y su familia, como sitio de residencia."

El demandado no contestó la demanda sino que el 18 de febrero de 1944, día señalado para la vista del caso, representado por su abogado, verbalmente se allanó y consintió en que se dictara sentencia en su contra y renunció al derecho de apelación. La corte por su Juez Sr. Massari, dictó sentencia decretando el desahucio y ordenó que el demandado desalojara la finca dentro del término de cincuenta días a contar del 18 de febrero y si así no le hiciere que se librara

el correspondiente mandamiento de ejecución. También declaró firme la sentencia por la renuncia que hizo el demandado.

El 5 de abril de 1944, cuando sólo faltaban cuatro días para vencer los cincuenta concedidos en la sentencia para desalojar la casa, el demandado, representado por otro abogado, radicó en la corte inferior una moción solicitando se decretara la nulidad de la sentencia recaída en este caso por el fundamento siguiente: "Que la demanda que dió origen a este pleito fué radicada el día 3 de febrero de 1944, o sea después que empezó la vigencia de las reglas de inquilinato promulgadas por la Oficina de Administración de Precios, en las cuales se establece que el casero debe notificar con diez días de anticipación al inquilino de su intención de hacer desalojar la propiedad y notificar dentro de las 24 horas siguientes a la Oficina de Administración de Precios (División de Inquilinato), requisito que en este caso no se cumplió, ya que así se desprende de la demanda pues no se alega debidamente."

La demandante se opuso a dicha moción alegando que la corte carecía de jurisdicción para revisarla porque dicha sentencia fué dictada a solicitud y se encuentra firme a instancias del mismo demandado sin que se hubiera pedido en tiempo su reconsideración y porque lo que trata el demandado es dilatar la ejecución de la sentencia y su lanzamiento de la finca "no obstante que él no es ni ha sido inquilino de la demandante."

En moción separada la demandante solicitó el 10 de abril, ya vencidos los cincuenta días concedidos al demandado para desalojar, su lanzamiento de la finca. La corte inferior dejó sin proveer esta moción y celebró una vista sobre la moción de nulidad de sentencia y el 12 de junio de 1944 por su Juez Sr. Belaval, dictó una resolución declarando con lugar la moción del demandado y anuló la sentencia dictada. Dene-

gada una moción de reconsideración lá demandante estableció el presente recurso de apelación.

 Es elemental en derecho que las partes no pueden por estipulación conceder jurisdicción a una corte que carece de ella para actuar sobre la materia objeto de la acción. Tampoco queda convalidada una sentencia dictada sin jurisdicción por el hecho de.que la misma lo haya sido por consentimiento de las partes. Véase Monografía en 86 A. L.R. 84, 88. A este efecto hemos resuelto que a virtud de una sentencia por consentimiento el demandado acepta "expresamente como ciertos los hechos consignados en la demanda y una sentencia de tal naturaleza, dictada por una corte con jurisdicción sobre la materia y sobre las partes, es válida y no puede ser atacada colateralmente". *Ex parte Morales,* 17 D.P.R. 1043. La cuestión primordial a resolver en este recurso es si la corte inferior actuó con jurisdicción al dictar la sentencia por consentimiento, o si por el contrario el no cumplimiento por la demandante con los requisitos exigidos por los reglamentos de inquilinato privó a la corte de jurisdicción en la acción de desahucio.

 El Reglamento de Inquilinato para Viviendas puesto en vigor en Puerto Rico por la Oficina de Administración de Precios es el mismo Reglamento Nacional vigente en los Estados Unidos y el cual se hizo extensivo a Puerto Rico para comenzar a regir el 1ro. de febrero de 1944. Así se hace constar en su artículo 1, A, párrafo segundo, en el cual se expone, además, el alcance del mismo, en esta forma:

"El Reglamento Nacional se hizo extensivo a Puerto Rico por la Enmienda del 3 de enero, efectiva el *1ro. de febrero de 1944* y se aplica a todo 'edificio, construcción o parte de los mismos, y el terreno a ellos anexo, y a cualquier otra propiedad, mueble o inmueble, *alquilada u ofrecida en alquiler para fines de vivienda en Puerto Rico* junto con todos los privilegios, servicios, accesorios, muebles, equipos, facilidades y mejoras relacionadas con el uso u ocupación de la propiedad.' " (Bastardillas nuestras.)

El artículo 13, A (9) del Reglamento define la palabra "inquilino" en esta forma:

"'Inquilino', incluye arrendatario, subarrendatario y *cualquier persona con derecho a la posesión, uso* u ocupación de cualquier vivienda." (Bastardillas nuestras.)

El artículo 6 del Reglamento que trata en general sobre el "Desalojo del Inquilino", establece, en su apartado A, ciertas restricciones y en el D, las notificaciones que deben hacerse antes de proceder al desahucio. Copiamos al margen las que consideramos pertinentes a este caso.[1] Por último, debemos hacer constar que de acuerdo con el artículo

[1]"Artículo 6.—Desalojo del Inquilino.

"A. Restricciones.. No obstante las disposiciones de cualquier obligación, contrato *o convenio* ya contraído o por contraerse, *que permitan que se dicte sentencia contra el inquilino* al admitir éste haber violado las condiciones de dicha obligación, contrato o convenio o que permitan la realización de otros actos contrarios a lo aquí dispuesto y *no obstante que el inquilino no tenga contrato de inquilinato o que de tenerlo el mismo haya expirado o terminado por cualquier otra causa, ningún casero podrá hacer desalojar al inquilino, mientras éste pague el alquiler a que tuviere derecho el casero,* ni mediante acción de desahucio, acción para recobrar o excluir al inquilino de la posesión ni mediante acción otra alguna y ninguna persona intentará desalojar o excluir a dicho inquilino de su posesión a menos:

"1. . . .

"6. Ocupación de la vivienda por el casero. Que el casero hubiere adquirido un derecho de compra o de posesión sobre la vivienda *con anterioridad a febrero 1ro. de 1944* y de buena fé tratare de recobrar la posesión de la vivienda para uso inmediato y ocupación personal de la misma. . . .

"D. Notificaciones requeridas.

"1.. Notificaciones anteriores al desahucio. En cada notificación hecha a un *inquilino* para que desocupe una vivienda se especificará en cuál de las razones mencionadas en este artículo se basa el casero para desalojar o desahuciar a dicho *inquilino.* Dentro de 24 horas después de entregado el original al inquilino. se radicará una copia de dicha notificación en la División de Inquilinato de la Oficina de Administración de Precios.

"A ningún *inquilino* se le podrá echar o desahuciar de una vivienda mediante acción en Corte o de otro modo, a menos que el casero le hubiera entregado al *inquilino* y a la División de Inquilinato de la Oficina de Administración de Precios, por lo menos con 10 (diez) días de antelación al tiempo fijado para desocupar. o al inicio de cualquier acción, una notificación por escrito al efecto, especificando las razones, de entre las enumeradas en este artículo, en que el ca-

1, D del Reglamento, sobre Nulidad de Renuncia de Beneficios, se dispone que "Será nulo todo convenio hecho por un *inquilino* para renunciar los beneficios concedídoles por este Reglamento."

La corte inferior, después de citar algunos de estos artículos del Reglamento fundamentó su resolución anulando la sentencia, diciendo, en parte, lo siguiente:

"No podemos asumir que el demandado en este caso sea un *precarista,* ya que su condición como tal precarista parece que. se desprende únicamente del hecho de que cuando Pura María Suárez adquirió la propiedad que hoy trata de recobrar, *dió por terminado el contrato,* que le notificó al demandado para que desalojara dicha propiedad en primer término para el 31 de diciembre de 1943 y en segundo término para el 31 de enero de 1944. Nos parece que la alegación de *precarista* se hizo más bien para darle esta acción en primera instancia a la Corte de Distrito y para no iniciar la acción en la Corte Municipal correspondiente, de acuerdo con el montante de la renta.

\* \* \* \* \* \* \*

"El día 6 de marzo de 1944, el Tribunal Supremo de Puerto Rico, mediante una ilustrada opinión de su Juez Presidente Señor Travieso, resolvió el *certiorari* Núm. 1542, *Américo Miranda versus Corte de Distrito de San Juan,* declarando que un anterior *inquilino* de una propiedad comprada posteriormente no era un *precarista* y por lo tanto hasta el 30 de junio de 1944 tenemos que considerar al demandado en este caso como *poseedor de. buena fe,* cuya posesión sola-

sero se fundare para solicitar el desalojo o desahucio y especificando además la fecha en que se le requiere *al inquilino* que desocupe. Cuando el desahucio se basare en falta de pago de alquileres, el período de notificación será el exigido por la Ley local, pero en ningún caso un período menor de tres días.

". . . . . . . . .

"2. Notificación al Administrador de comienzo de acciones de desahucio. Al comenzar una acción para desalojar o desahuciar *a un inquilino,* incluyendo los casos basados en falta de pago, el casero notificará por escrito a la División de Inquilinato de la Oficina de Administración de Precios el título del caso, el número asignádole por la Corte, si fuere posible, el tribunal ante el cual se radicó, el nombre y la dirección del inquilino y en cuál de los fundamentos de los expresados en este artículo se basa el casero para solicitar dicho desalojo o desahucio.

"E. La Ley Local. Nada de lo dispuesto por este artículo se interpretará en el sentido de autorizar el desalojo o desahucio de un *inquilino* a menos que tal desalojo o desahucio estuviere autorizado por la ley local." (Bastardillas nuestras.)

mente puede ser terminada mediante la correspondiente acción de desahucio, en la Corte con jurisdicción competente por la nueva adquirente de la propiedad, después de cumplir con las disposiciones terminantes del Reglamento de Inquilinato, artículo 6, letra 'd', números 1 y 2.

"Entendemos que la falta de notificación equivale a una falta de causa de acción y que el demandado está en tiempo hábil para formularla ante esta Corte, ya que por tratarse de una acción privilegiada la corte está en la obligación de considerarla aún en este estado del procedimiento." (Bastardillas nuestras.)

Somos de opinión que la corte inferior cometió manifiesto error en todos estos razonamientos y como consecuencia en la conclusión a que llegó.

En primer término nada hay en las alegaciones de la demanda que justifique la conclusión de que la demandante alegara 1ro., que el demandado era un precarista y 2do. que diera por terminado el contrato. La demanda lo que alega es que el demandado "detenta la posesión y ocupa materialmente, sin pago de canon o merced alguna" la finca. Tampoco se alega en parte alguna de la demanda que el demandado hubiera sido inquilino del dueño anterior y que al adquirir la finca la demandante dió por terminado el contrato de inquilinato. No debemos olvidar que a virtud de la sentencia por consentimiento dictada en este caso, el demandado aceptó como ciertos todos los hechos alegados en la demanda. Empero, esto no justifica que se inserten en la demanda, por meras conjeturas o deducciones, hechos que nunca fueron alegados.

Es cierto que en el caso de *Miranda* v. *Corte*, 63 D.P.R. 161, citado por la corte inferior, resolvimos que un anterior inquilino de una propiedad comprada posteriormente no era un precarista, pero en dicho caso se alegó y probó que el demandado Jarabo en la acción de desahucio, tenía un contrato de arrendamiento con el dueño anterior. Y si bien dijimos que el demandado no era un precarista, expresamente resolvimos, después de citar el artículo 1461 del Código Ci-

vil y el artículo 621 del Código de Enjuiciamiento Civil, que "el demandante Miranda tendría el derecho indiscutible de desahuciar a Jarabo como *detentador de la posesión del inmueble*". (Bastardillas nuestras.)[2] Si no prosperó la acción de desahucio objeto de revisión en dicho caso fué porque el demandante no cumplió con el requisito de alegar, de acuerdo con el artículo 621 del Código de Enjuiciamiento Civil según quedó enmendado por la Ley núm. 14 de 1941 ((2) pág. 45), que deseaba de buena fe recobrar el inmueble para residencia de él o de su familia y que él habitaba una casa que no era de su propiedad ni lo había sido dentro del año anterior al comienzo de la acción. Por el contrario el demandado en dicho caso alegó como defensa especial, y probó, que el demandante vivía en una casa de su propiedad y que lo había sido dentro del año anterior.

En el caso de autos no sólo se alegó por la demandante que el demandado era un detentador sino que cumplió expresamente en el hecho tercero de la demanda, supra, con los requisitos exigidos por el artículo 621 del Código de Enjuiciamiento Civil, supra. Esas alegaciones de la demanda no fueron controvertidas por el demandado. Bajo las circunstancias concurrentes, ¿son aplicables las disposiciones contenidas en el Reglamento de Inquilinato transcritas anteriormente a un caso como el de autos? Consideramos que no.

Tanto por su título como por su contenido es obvio que ellas regulan los casos en que existe un contrato de inquilinato entre el casero y el inquilino y también aquellos casos en que "no obstante que el inquilino no tenga contrato de inquilinato o que de tenerlo el mismo haya expirado o terminado por cualquier otra causa, ningún casero podrá desalojar al inquilino, mientras éste pague el alquiler a que tuviere derecho el casero". Artículo 6A, supra. No habiendo en la demanda alegación alguna en cuanto a que hubiera

---

(2)Para una amplia discusión en cuanto a los conceptos "precario" y "detentación", véanse los casos de *Municipio de Ponce* v. *Collazo*, 56 D.P.R. 509 y *Pueblo* v. *Giorgetti & Co., Ltd.*, 46 D.P.R. 61.

existido contrato de inquilinato entre la demandante y el demandado, aparentemente la corte inferior basó su conclusión de que el demandado era un "poseedor de buena fe" en la última acepción de la definición de la palabra "inquilino" contenida en el artículo 13, A(9), supra, al efecto de que incluye "cualquier persona con derecho a la posesión, uso u ocupación de cualquier vivienda". Empero, de acuerdo con las alegaciones de la demandada, aceptadas por el demandado, él es un detentador y como tal no puede considerársele como tal poseedor de buena fe pues, como dijo esta Corte en el caso de *Pueblo* v. *Giorgetti & Co., Ltd.*, 46 D.P.R. 61, a la página 71: "La retención de una cosa que pertenece a otro, injustamente, sin derecho a tenerla es lo que a nuestro juicio, constituye detentación dentro del significado de esta palabra tal y como ha sido usada en la Ley de Desahucio".

Si el demandado retiene la casa de la demandante "injustamente y sin derecho a tenerla", no puede considerársele un poseedor de buena fe. Habiendo llegado a la conclusión de que el demandado, como detentador que admitió ser, no tenía ni tiene derecho a la posesión del inmueble de la demandante forzoso es concluir que la demandante, bajo las circunstancias concurrentes en este caso, no estaba obligada a cumplir con los requisitos de notificación exigidos por el Reglamento de Inquilinato.

Siendo la detentación una de las causas que dan lugar al desahucio de acuerdo con nuestra ley, actuó con jurisdicción la corte inferior bajo el artículo 6-E del Reglamento, supra, al dictar la sentencia por consentimiento. *Es errónea la resolución apelada que la anuló y en su consecuencia debe ser revocada.*