EL MUNICIPIO DE PONCE, representado por su Alcalde, JOSÉ TORMOS DIEGO, demandante y apelante, *v.* MONSERRATE COLLAZO, demandado y apelado.

Núm. 8025.—*Sometido:* Diciembre 6, 1939. *Resuelto:* Abril 19, 1940.

*R. Hernández Matos,* abogado del apelante; *Ramón A. Gadea Picó,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se trata de un pleito de desahucio en precario fallado en contra del demandante.

---

[*] NOTA: Véase el prefacio.

Éste alegó en su demanda que era dueño de cierta finca rústica de cinco cuerdas en la cual estaban edificadas dos casas y que el demandado la ocupaba desde hacía más de un año sin pagar canon o merced "detentando precariamente la posesión de dicha propiedad sin derecho para ello y en contra de la voluntad del municipio demandante."

Negó en su contestación el demandado que la finca perteneciera al demandante y que él la poseyera precariamente. Como defensas especiales alegó que no existía nexo o vínculo legal o contractual alguno entre demandante y demandado que pudiera ser disuelto en el pleito, y que entre el demandante y doña Cruz Montes en cuya casa vivía el demandado, había pendiente una acción sobre nulidad de ejecutivo hipotecario en relación con la finca a que se refiere la demanda.

El 13 de febrero de 1939 la corte declaró la demanda sin lugar. Fundó su sentencia en una relación del caso y opinión de la que transcribimos lo que sigue:

"La Corte, como resultado de las admisiones contenidas en la contestación del demandado y de la evidencia introducida por ambas partes, y apreciada en conjunto, declara probados satisfactoriamente los siguientes hechos:

"El Municipio de Ponce, siendo dueño de un crédito hipotecario que gravaba la finca 'Olga' descrita en el hecho 2º de la demanda de desahucio, entabló un procedimiento ejecutivo sumario contra Cruz Montes, el que, seguido por todos sus trámites, culminó en la venta en pública subasta de dicha finca 'Olga' y su adjudicación al Municipio de Ponce, según todo ello aparece de la escritura pública número 24, otorgada en 28 de marzo de 1936 en Ponce ante el Notario Rafael Atiles Moréu, por el Márshal de esta Corte de Distrito (Exhibit 'A' del demandante).

"Dicha finca 'Olga' era, hasta su adjudicación, de Cruz Montes, madre política del demandado Monserrate Collazo, quien vive en la misma casa que su suegra Cruz Montes, a quien acompaña, desde antes de ser ejecutada y adjudicada dicha finca 'Olga' al Municipio de Ponce.

"El demandado Monserrate Collazo no paga canon ni merced alguna al Municipio por poseer la referida finca 'Olga', y ha sido requerido por el Municipio para que desaloje dicha finca, sin que lo haya verificado.

"Aparece también probado que existe un pleito pendiente, sobre nulidad del referido procedimiento hipotecario, bajo el número 10629 de esta Corte de Distrito, entablado por Cruz Montes contra el Municipio de Ponce. La demanda del presente caso de desahucio no se entabló contra Cruz Montes sino contra su yerno y acompañante Monserrate Collazo.

"El artículo 2 de la Ley de Desahucio aprobada en el año 1905 lee como sigue:

" 'Artículo 2.—Procederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas, puestos por el propietario en sus fincas, y CUALQUIERA OTRA PERSONA QUE DETENTE LA POSESIÓN MATERIAL O DISFRUTE PRECARIAMENTE, sin pagar canon o merced alguna.''

"La Corte Suprema de Puerto Rico en el caso de *Correa* v. *Correa,* 32 D.P.R. 273, se expresó así:

" 'El demandado no es inquilino, colono o arrendatario de la demandante. Tampoco fué puesto por ella como administrador, encargado, portero o guarda de la propiedad de que se trata. ¿Puede concluirse que *detente* la propiedad o la disfrute *en precario* que es lo que realmente sostiene la demanda?

" '*Detentación* significa, según Escriche, "La tenencia o posesión de una cosa en nombre de otro'', y *detentador,* según la misma autoridad, es "el que tiene o posee una cosa en nombre de otro, COMO EL COMODATARIO, depositario y otros, quienes pueden implorar el oficio del juez contra los pertubadores de su detentación.'' '

"Y más adelante, en el mismo caso de *Correa* v. *Correa,* 32 D.P.R. 278, la Corte Suprema se expresó así:

" 'Basta penetrar en el significado de las palabras *detentación* y *precario,* para concluir que al usarlas el legislador quiso abarcar con ellas todas las relaciones que pudieran existir ENTRE EL DUEÑO DE LA PROPIEDAD Y AQUELLOS QUE HUBIERAN ENTRADO EN LA POSESIÓN Y LA POSEYERAN EN SU NOMBRE A VIRTUD DE CONTRATO O POR MERA TOLERANCIA, o como intrusos, pagando o no pagando, y que no pudieran comprenderse en los conceptos de inquilino, colono, arrendatario, administrador, encargado, portero o guarda. Y LA PRUEBA NO PONE DE MANIFIESTO EN ESTE CASO NINGUNA DE ESAS RELACIONES ENTRE LA DEMANDANTE Y EL DEMANDADO, ni cualquiera otra derivada de ellas, o independientemente, que pudiera considerarse dentro del espíritu de la ley.' (Mayúsculas nuestras.)

"La precedente doctrina es de perfecta aplicación al presente caso, por haberse probado en el mismo que el demandado posee la

finca 'Olga', con su suegra Cruz Montes, *desde mucho antes de la ejecución y adjudicación al Municipio de Ponce.*

"La posesión de la finca 'Olga' por parte del demandado Monserrate Collazo empezó cuando era dueño de la finca Cruz Montes, sin que, entonces, el Municipio de Ponce tuviera ningún derecho a la posesión de la referida finca, y sin que pudiera mediar tolerancia o consentimiento de clase alguna por parte del Municipio para dicha posesión por el demandado."

Apeló el Municipio. Señala dos errores cometidos a su juicio por la corte sentenciadora al declarar sin lugar la demanda y al considerar aplicable al caso la doctrina del de *Correa* v. *Correa,* 32 D.P.R. 273.

■■ Que el Municipio demandante es, según la titulación, el dueño actual de la finca y que el demandado se encuentra en ella sin haber celebrado con el Municipio contrato alguno, contra su voluntad, y sin pagar canon o merced, son hechos aceptados. El demandado alegó, sin embargo, que vivía en la finca con el consentimiento de su dueña Cruz Montes quien tenía entablado un pleito contra el Municipio pidiendo la nulidad del ejecutivo hipotecario a virtud del cual fué su título traspasado al demandante, habiéndose comprobado en el juicio que Cruz Montes—que vive en la finca todavía—llamó a su lado a su hijo político el demandado desde antes de iniciarse el ejecutivo y que está pendiente en la Corte de Distrito de Ponce el pleito de nulidad.

La verdad es que no se explica por qué el procedimiento de desahucio no fué dirigido contra Cruz Montes, o contra ella y Monserrate Collazo si por alguna circunstancia se consideraba necesario o conveniente hacerlo así, pero nos enfrentamos con una realidad y es a base de ella que el recurso debe resolverse.

Dejando a un lado, de momento, el pleito de nulidad, es necesario reconocer que el demandante es el dueño actual de la finca, con derecho por tanto a disfrutar de su posesión contra todo el mundo y por consiguiente contra el demandado.

Se alega que eso no obstante no puede el demandante desahuciar al demandado porque la ley especial sobre la materia no comprende un caso como el suyo.

El artículo 2 de dicha ley copiado en la opinión del juez sentenciador que dejamos transcrita, autoriza el procedimiento específicamente contra "los inquilinos, colonos y demás arrendatarios" y contra "los administradores, encargados, porteros o guardas, puestos por el propietario en sus fincas", autorización que no comprende en verdad este caso, pero prescribe además que el desahucio procede contra "cualquiera otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced", y en esta última prescripción puede comprenderse, a nuestro juicio, una relación como la que surge entre el demandante y el demandado, conclusión que encuentra apoyo en la misma decisión de *Correa v. Correa,* 32 D.P.R. 273, en el propio párrafo de ella que copia en su opinión el juez sentenciador, si se da énfasis no sólo a las mayúsculas usadas por dicho juez si que a todo lo que en él se dice.

Que el demandado jamás pagó canon o merced, está admitido. ¿Se encuentra en la finca en precario en relación con el dueño actual, o sea con el demandante? Véamoslo.

En el caso de *Cerra v. González,* 29 D.P.R. 289, 291, citado en el de *Correa v. Correa,* supra, se dice:

"Argumenta el apelante que vencimiento de contrato y precario son dos estados de derecho distintos y cita a Escriche que dice que precario 'en su más estrecha acepción es un préstamo revocable a voluntad del que lo ha hecho; y se toma también por todo lo que se posee como en préstamo y a voluntad de su dueño, y así se llama *precaria* una posesión, para dar a entender que la tal posesión no es más que un efecto de la tolerancia del propietario, sin que pueda dar derecho alguno al poseedor'."

Y el apelado insiste en que el precario es un contrato que no consta que se celebrara en este caso y por lo tanto que el desahucio por precario no procede. Cita de la obra "Jui-

cio de Desahucio'', Cap. VI, Del Precario, pág. 39, por Román Bonsoms y Gené, lo que sigue:

''El precario es un contrato por el que se concede una cosa a otro para que la disfrute a voluntad del cedente.

''Antiguamente el precario era considerado por los legistas como un simple acto de liberalidad, pero examinado en todas sus formas, reúne todos los requisitos de contrato, y así lo consideran hoy todos los autores.

''El precario se diferencia del comodato o préstamo en que el comodante o prestamista no puede repetir la cosa prestada sino después de acabado el tiempo del comodato, al paso que el que la dió a título de precario, la puede repetir siempre que quiere, y por esto algunos autores definen el precario diciendo que es el préstamo revocable a voluntad del que lo ha hecho y también todo el que posee una cosa en préstamo y a voluntad de su dueño se le dice vulgarmente que está en situación precaria dando a entender que esta situación depende de la tolerancia del propietario.''

Y también de los ''Estudios de Derecho Civil'', volumen 4, pág. 864, por Sánchez Román, lo siguiente:

''El precario es una variedad de comodato.  .    .    .    .

.  .    .    .    .    .    .    .    .    .    .    .

''El derecho romano se ocupó de este contrato; pero las leyes castellanas anteriores al Código Civil han prescindido de él. Sin embargo, en la práctica de la contratación suele celebrarse alguna vez, regulándose por los principios y leyes del comodato, menos en lo relativo a las responsabilidades, por razón de culpa de los contratantes.''

Sin embargo Manresa en sus ''Comentarios a la Ley de Enjuiciamiento Civil'', volumen seis, página 27, de la tercera edición, reconoce una significación más amplia al precario, tan amplia que, adoptándola, bien puede comprenderse en ella este caso concreto que estudiamos.   Dice Manresa:

''Según el Diccionario de la Lengua, se entiende por *precario* 'lo que sólo se posee como en préstamo y a voluntad de su dueño'. De acuerdo con esa significación forense de dicha palabra, todo el que sin ser en la actualidad dueño, ni usufructuario, ni arrendatario, ni poder ostentar otro título que le dé derecho a disfrutar la finca, sea rústica o urbana, en cuya posesión se halle, más que la tolerancia

o condescendencia del dueño actual de la misma, sin pagar renta ni merced alguna, es considerado como tenedor precario y procede contra esa persona, cualquiera que sea, el juicio de desahucio a voluntad del dueño. . . .''

Con respecto a Cruz Montes, la antigua dueña, precaria era la posesión del demandado y precaria continúa siendo en buena lógica y dentro de la realidad de los hechos, con respecto al nuevo dueño, el demandante. El demandado sólo podría permanecer en la posesión de la finca, si el nuevo dueño continuara en la tolerancia del antiguo. No continuó y surgió entónces la posesión contraria a la voluntad del dueño alegada en la demanda.

La tendencia a ampliar el significado del precario la expresa también la Enciclopedia Jurídica Española en un trabajo de su colaborador Víctor Covián. En él se trazan los orígenes y la historia del mismo y luego al analizar la ''Naturaleza de este contrato'' se expresa:

''No es fácil determinarla y más hoy con la tendencia de la doctrina legal a ampliar los casos de precario a todos aquellos en que uno posee cierta cosa sin derecho para ello. Decían los clásicos que se trataba de una *Concessio rei seu possessionis, quam ita impetranus, ut tandiu duret quandiu concedenti placuerit,* asignándole tres notas características: una, la concesión del uso de cierta cosa; otra, mediante súplicas o ruegos del que la recibe, y así lo indica la etimología de la misma palabra *preces*; y la tercera, por el tiempo que plazca al concedente. . . . .

''Claro que lo regular es que se tratara de una liberalidad obtenida por ruegos, y, sin embargo, hoy no es así, porque, repetiremos, en los casos dados ante los Tribunales generalmente, ni el origen del precario es la liberalidad, ni menos la súplica del que tiene la cosa, sino una posesión de hecho que si en su origen pudo ser justa, después no, y a falta de otro medio más expedito para privarle de ella, se acude al desahucio, suponiendo una tenencia en precario. . . .'' (Obra citada, pág. 339.)

Pero aunque resolviéramos que dentro del significado estricto del precario no fuera posible comprender este caso, nos encontramos con que en la ley sobre la materia vigente

en Puerto Rico se incluye otra forma de posesión sin título válido que oponer al del dueño como causa de desahucio. Nos referimos a la detentación. "Procederá el desahucio contra . . . . cualquiera otra persona que detente la posesión material . . . ." dice el estatuto. Y sobre la detentación nos parece que no puede levantarse duda alguna.

Se alegó en la demanda que el demandado "detentaba precariamente la posesión . . . sin derecho para ello", y se probó en el juicio que el demandado se encontraba en la finca por el mero consentimiento del antiguo dueño. Ese consentimiento cesó de valer con la cesasión del derecho de propiedad del que lo otorgó. Otra persona se convirtió en dueño y esa otra persona, el demandante, lo requirió para que saliera de la finca. No lo hizo y desde ese momento quedó detentando la posesión material del inmueble y surgió la causa del desahucio.

En la opinión de la corte se copia de la opinión del caso de *Correa* v. *Correa,* supra, una cita de Escriche que se hizo en el caso de *Cerra* v. *González,* supra, que no da la idea total del significado de la detentación. Algunos años más tarde esta propia corte en el caso de *Pueblo* v. *Giorgetti y Co.; Ltd.,* 46 D.P.R. 61, 70, dijo:

"Tampoco surge de la prueba que la demandada esté detentando la posesión material de la finca dentro del significado en que el verbo 'detentar' aparece usado en la Ley de Desahucio. Con respecto a la acepción jurídica de la palabra 'detentación', compiamos a continuación lo que dice sobre este particular la Enciclopedia Jurídica Española en el tomo onceno, página 907:

" 'En el Diccionario de Escriche se define la *detentación* como "la tenencia o posesión de una cosa en nombre de otro", y el sustantivo *detentador,* entendiendo por tal "el que tiene o posee una cosa en nombre de otro, como el comodatario, depositario y otros, quienes pueden implorar el oficio del juez contra los perturbadores de su detentación."

" 'No es éste, sin embargo, el concepto exactamente jurídico, ni siquiera el corriente, de la palabra que sirve de epígrafe al presente artículo. *Detentación* significa propiamente la tenencia o posesión

de una cosa o derecho en sentido gramatical, que no ha de confundirse con la *posesión natural* que define el Código Civil en su artículo 430; siendo de esta posesión natural y no de la material tenencia, de la que pueden derivarse y se derivan relaciones jurídicas. Y restringiendo más este concepto, suele entenderse por *detentación,* en el lenguaje general y en las leyes, la acción y el efecto de retener uno sin derecho aquello que no le pertenece.

" '*Detentare* (como observa con no escasa razón Bekker al quejarse de los defectos de la romana terminología posesoria) y sus derivados *detentio, detentatio, detentator,* son palabras rarísimas; las pocas veces que las encontramos es incidentalmente y con referencia a otras materias, pero nunca con relación exclusiva a la teoría posesoria; *detentator* se encuentra sólo dos veces, y aun en el Código, no en el Digesto. Puede quizá vagamente deducirse que, si bien *detentio* significa el acto de *tenere* y por ello diferente de *possessio, detentatio* y sus demás derivados significan sólo una retención y conservación de una cosa prescindiendo de su justicia, la mayor parte de las veces completamente injusta.'

"Estamos de acuerdo con el concepto que merece a la Enciclopedia Jurídica la palabra detentación. La posesión natural crea relaciones jurídicas que no surgen de la posesión estrictamente material. La tenencia natural de la cosa lleva consigo la posesión material, pero ésta puede existir independientemente de la natural. El acto de un intruso, por ejemplo, que se apodera de una cosa es una posesión material que no crea relaciones jurídicas. La retención de una cosa que pertenece a otro, injustamente, sin derecho a tenerla, es lo que a nuestro juicio, constituye detentación dentro del significado de esta palabra tal y como ha sido usada en la Ley de Desahucio."

Hemos estudiado el recurso sin tomar en consideración el pleito de nulidad que se alegó y se demostró que había iniciado la anterior dueña, con cuyo consentimiento vivía en la finca el demandado. Lo estudiaremos ahora tomando en consideración la existencia de dicho pleito.

■ ¿Se demostró con ello que no obstante la condición de dueño del demandante el demandado se encontraba justamente en la posesión, como sucedió en los casos de *El Pueblo* v. *Giorgetti & Co., Ltd.,* supra, y *Correa* v. *Correa,* supra? ¿Surgió un conflicto de títulos?

Si puede contestarse en la negativa la segunda pregunta, quedará contestada también en la negativa la primera.

En el juicio el demandado se limitó a probar la existencia del pleito de nulidad y dijo por su abogado: "Nosotros no presentamos un conflicto de títulos, sino . . . . una cuestión, una situación de hecho; que el demandado vive en casa de Cruz Montes y que él vive allí con el permiso que le ha dado Cruz Montes, y Cruz Montes tiene un pleito en que precisamente está envuelta esta misma finca." (Trans. de Evid., pág. 34.)

Los autos del pleito no forman parte de la transcripción. No sabemos cuáles son las causas de nulidad alegadas. Nada consta sobre el mérito que las mismas puedan tener.

Bajo esas circunstancias no es el caso de *Colón* v. *Colón,* 51 D.P.R. 97, el aplicable, si que el de *León Lugo* v. *Alvarado,* 24 D.P.R. 700, 701, en el que se dijo:

"En cuanto al segundo, el hecho de que el apelante ha pedido la nulidad del juicio que produjo la venta y adjudicación de la casa no es motivo para declarar que León Lugo no tenga un título suficiente para obtener sentencia favorable en un juicio por desahucio porque mientras no se anule el juicio y la venta es válido el título del demandante, seguirá siendo el dueño y como tal tiene derecho a que el apelante desocupe la casa en cuestión. . . ."

Para nada, pues, influye la alegación y prueba de la existencia del pleito de nulidad pendiente. El desahucio debe resolverse como si dicho pleito no existiera. Y ya concluímos que en tal caso, detentando como detenta el demandado la posesión material de la finca sin derecho alguno, el desahucio está en orden.

*En su consecuencia, procede revocar la sentencia apelada y dictar la que debió haber dictado la corte de distrito.*

El Juez Asociado Sr. Wolf está conforme con el resultado.*

---

* NOTA: Véase el prefacio.