Rosario Droz, demandante y apelada, *v.* Luis Caballer, demandado y apelante.

Núm. 8244.—*Sometido:* Enero 16, 1941. *Resuelto:* Marzo 14, 1941.

*R. V. Pérez Marchand,* abogado del apelante; *Rosario Droz,* por su propio derecho.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Este es un caso de desahucio en precario. Rosario Droz acudió a la corte de distrito y alegando ser dueña de un solar con casa situado en Ponce, le pidió que dictara sentencia ordenando a Luis Caballer que habitaba la casa y ocupaba el solar sin pagar canon, en contra de su voluntad, que desalojara la finca, de acuerdo con la ley.

Citado Caballer alegó que la demanda no aducía hechos suficientes para determinar una causa de acción y que la

demandante no tenía capacidad legal para pedir el desahucio porque su título era insuficiente.

Contestó además la demanda negando sus hechos y alegando como materia nueva que según su mejor información y creencia la demandante no es la parte realmente interesada; que en la misma fecha de la contestación había iniciado en la propia Corte de Distrito de Ponce un pleito sobre nulidad del ejecutivo hipotecario a virtud del cual pasó a Trautman el título de la propiedad en cuestión, y que el hecho de figurar Rosario Droz como demandante se debía a una combinación con Trautman y Angelina y Eugenia Pieraldi para evadir la acción de nulidad.

En la primera comparecencia la demandante presentó prueba documental consistente en la escritura notarial núm. 152 de compraventa y ofreció evidencia testifical a practicarse en la segunda y el demandado introdujo también prueba documental consistente en los records números 3235 y 3203 de la propia corte y ofreció evidencia testifical a practicarse en la segunda comparecencia. Celebrada ésta, la corte dictó sentencia declarando la demanda con lugar y condenando al demandado a desalojar la propiedad dentro de un término de quince días a contar desde el en que quedara firme la sentencia, con los demás pronunciamientos de ley.

El demandado apeló. Señala en su alegato tres errores cometidos a su juicio por la corte al declarar sin lugar su excepción de falta de hechos determinantes de causa de acción, al desestimar su defensa de no ser la demandante la parte realmente interesada y al resolver el caso aplicando la jurisprudencia establecida en el de *León* v. *Alvarado*, 24 D.P.R. 700.

A nuestro juicio el primero de los errores señalados no existe. La excepción admite la certeza de los hechos alegados en la demanda y partiendo de esa certeza precisa concluir que la demanda aduce hechos bastantes para determinar la acción que se ejercita.

El caso de *Municipio de Ponce* v. *Collazo*, 56 D.P.R. 509 que para otros fines invoca el apelante, es autoridad para sostener que el precario es causa para el desahucio, y de los hechos alegados surge que la demandante es dueña de la propiedad en cuestión, que el demandado ocupa dicha propiedad en precario, esto es, sin pagar canon ni merced, y que la ocupación es en contra de la voluntad del dueño, y ello es bastante.

Los errores segundo y tercero, o sea, los relativos a la insuficiencia del título de la demandante y a la indebida aplicación del caso de *León* v. *Alvarado*, supra, pueden estudiarse conjuntamente.

Apreciando la evidencia la corte sentenciadora declaró probados los siguientes hechos:

"Virginia Arenas, esposa que fué del demandado Luis Caballer, constituyó hipoteca sobre la finca urbana que es objeto del presente pleito de desahucio, a favor de George Trautman, esposo de Vicenta Pieraldi, según la escritura número 153 de 8 de diciembre de 1925 ante el Notario Lic. Eduardo Flores Colón. En octubre 20 de 1928 Vicenta Pieraldi viuda de Trautman inició un procedimiento ejecutivo sumario en cobro de dicha hipoteca contra Virginia Arenas de Caballer y su esposo Luis Caballer, terminando dicho procedimiento con la venta en pública subasta y adjudicación a la ejecutante, de la finca hipotecada, según acta de subasta de fecha 26 de diciembre de 1928.

"El demandado en este pleito de desahucio, Luis Caballer, está en la actualidad habitando la casa con solar, objeto del desahucio, sin pagar canon ni merced alguna a la demandante; habiendo residido dicho demandado en la referida casa, continuamente, por un período de veinticinco años.

"Por escritura pública número 152, de 15 de agosto de 1939, ante el Notario Lic. Fernando Zapater Martínez, Emil Trautman en su propio derecho, y como apoderado de Angelina y Eugenia Pieraldi Garrafa, vendió la finca urbana tantas veces mencionada a Rosario Droz, la demandante, quien se funda en ese título para interponer la demanda de desahucio en el presente caso, la que fué radicada en octubre 18 de 1939.

"En octubre 27 de 1939 el demandado Luis Caballer, radicó en esta corte, bajo el número 3203, una demanda sobre nulidad del

ejecutivo sumario antes mencionado, contra Emil Trautman y Angelina y Eugenia Pieraldi y Garrafa, como causahabientes y sucesores de Vicenta Pieraldi viuda de Trautman; encontrándose dicho pleito en tramitación, sin que se haya dictado todavía sentencia en el mismo.''

Y seguidamente concluyó:

''...la corte entiende que está obligada a resolver este pleito de acuerdo con la doctrina sentada por la Corte Suprema de Puerto Rico en el caso de *León* v. *Alvarado*, 24 D.P.R. 700 a 701, en cuya opinión la Corte Suprema se expresó, literalmente, como sigue:

'' 'En cuanto al segundo, el hecho de que el apelante ha pedido la nulidad del juicio que produjo la venta y adjudicación de la casa no es motivo para declarar que León Lugo no tenga un título suficiente para obtener sentencia favorable en un juicio por desahucio, porque, mientras no se anule el juicio y la venta, es válido el título del demandante, seguirá siendo el dueño y como tal tiene derecho a que el apelante desocupe la casa en cuestión. Declarar que la reclamación de nulidad de un título impide ejercitar los derechos que del mismo dimanan equivaldría a resolver en el juicio de desahucio que dicho título adolece de los vicios en que se basa la nulidad pretendida, cuestión ésta que no puede ser apreciada ni resolverse en un juicio sumario y especial como es el de desahucio en el que sólo se trata del derecho que para despedir al que ocupa la finca tiene el que por el momento aparece dueño y poseedor de ella.'

''Por todo lo anteriormente expuesto la corte es de opinión que debe dictarse una sentencia declarando con lugar la demanda de desahucio, imponiendo al demandado las costas, por mandato imperativo de la Ley núm. 69 de 11 de marzo de 1936 ((2) pág. 353), pero sin incluir honorarios de abogado.''

Hemos examinado la evidencia y a nuestro juicio la corte de distrito la apreció correctamente.

La de la demandante consistió en su propia declaración y en la de su hijo Diego Alvarez. La demandante es una anciana de más de ochenta años y su hijo que estaba asociado en un negocio de minas con Emil Trautman fué el que actuó por ella en el contrato de compra de la finca en cuestión.

La finca había sido ejecutada para el cobro de una hipoteca constituída por su dueña Virginia Arenas, esposa del demandado, con intervención de éste, a favor de George

Trautman y adjudicada a la heredera del acreedor hipotecario, su viuda Vicenta Pieraldi, desde diciembre 26, 1928. Luego, por testamento, pasó a Angelina y Eugenia Pieraldi y Emil Trautman, quienes la vendieron a la demandante por escritura pública otorgada en agosto 15, 1939.

El título de dueña de la demandante es, pues, claro y legítimo. Sin embargo, se insiste por el apelante en que es deficiente porque Diego Alvarez declaró que el contrato no tendría validez definitiva hasta que la compradora fuera puesta en posesión, siendo lo cierto que el demandado es el que está en la posesión real de la finca sin que jamás se le haya despojado de ella.

Esa condición no consta del contrato mismo, pero admitiendo que sea cierto que como cuestión de honor Emil Trautman quedó con Diego Alvarez en que de no poder la compradora posesionarse materialmente de la finca se rescindiría el contrato, ello no quiere decir que el título de la demandante sea deficiente, ni que la demandante sea una parte ficticia.

El precio de la venta fué el de ochocientos dólares. La mitad se pagó de contado y se pactó que la restante se pagaría dentro de un año. El título pasó por entero a la compradora y ésta tenía personalidad para iniciar el desahucio.

Frente a ese título y frente al hecho innegable de que el demandado venía ocupando la finca sin pagar canon alguno desde hacía más de diez años, y contra la voluntad de la demandante desde que ésta adquirió la propiedad de la misma, ¿qué opuso el demandado?

Sólo opuso su propia declaración y el hecho de haber establecido el 26 de octubre de 1939, o sea nueve días después de entablada la demanda de desahucio, el pleito de nulidad del ejecutivo hipotecario cuyo escrito inicial se presentó en octubre 20 de 1928.

En su declaración narra el demandado, periodista, de sesenta y dos años de edad, ciego por varios años, la larga

historia del caso.   Adquirió la finca desde hacía un cuarto de siglo y la puso a nombre de su esposa.   No obstante constituir su hogar, su único bien material, la gravó en auxilio del abogado-notario Eduardo Flores Colón, así:

"Pues bueno, aquí había un abogado, este abogado como Notario quebrantó su juramento y dispuso de un dinero que pertenecía a la divorciada de Fernando Figueroa, y él se presentó a mí, y yo quise salvarle y le dije: Yo no tengo dinero, lo único que tengo es esta casa, y la hipotequé para salvarlo."

Esa fué la hipoteca ejecutada en 1928.   No pudo el demandado Caballer pagar la deuda contraída.   Su deseo de servir fué superior a sus medios.   Decayó en el pago de intereses. Dice que con la ayuda de sus amigos—entre otros el propio juez que presidía el juicio—logró solventarlos.   Trata de explicar los diferentes incidentes ocurridos y en relación con la tramitación del ejecutivo hace a veces afirmaciones que los autos contradicen y muestra su contrariedad ante el hecho de que Trautman se desprendiera del dominio de la finca y apareciera en escena la demandante a quien ofreció sustituir pagándole lo que había satisfecho, negándose ella a aceptar su proposición.

No es éste en verdad un caso usual.   Fácil sería decir que no era propio para ser resuelto dentro de los trámites del juicio sumario de desahucio y revocar por tal motivo la sentencia, pero ello sería aplicar nuestra jurisprudencia sobre la materia indebidamente porque la aparente complicación se desvanece en cuanto se analizan los hechos con firmeza y a conciencia.

Se explica la actitud de Trautman.   Conocía al demandado, sus condiciones de inteligencia, de salud, de medios materiales, el origen de la deuda, y parece que se resistía al desahucio.   Pasaron los años y vino al fin el consejo de su socio y lo aceptó.   El hecho de que él se eliminara, quizá con el único propósito de no tener que hacer frente personalmente a la contienda judicial, no vicia ésta.   Resolvió su propio problema de acuerdo con su razón y su conciencia.

234

Enajenó su derecho para que otro asumiera la desagradable responsabilidad de hacerlo valer contra una persona como el demandado. Y el hecho de que como cuestión de honor garantizara al adquirente para el caso de que no pudiera obtener la posesión, tampoco anula la transacción, como ya dijimos. No es ésa una cuestión entre el demandado y la demandante, sino entre ésta y su vendedor.

Las circunstancias que concurren en cuanto a la existencia del pleito de nulidad, surgen de lo que llevamos expuesto.

En el caso del *Municipio de Ponce* v. *Collazo*, 56 D.P.R. 509, se resolvió que ''El haberse iniciado un pleito pidiendo la nulidad del juicio que produjo la venta y adjudicación de la propiedad objeto de un desahucio, no es motivo por sí solo para declarar que el adjudicatario no tiene título suficiente para ejercitar el deshaucio.'' Y a esa conclusión se llegó después de un estudio cuidadoso de los hechos del caso y de lo resuelto por esta Corte tanto en *Colón* v. *Colón*, 51 D.P.R. 97 como en *León* v. *Alvarado*, 24 D.P.R. 700.

Y aquí es en verdad aplicable la misma regla. Las circunstancias concurrentes, la fecha en que el pleito de nulidad fué iniciado, el motivo alegado para la nulidad y lo declarado por el propio Caballer muestran un caso en sus hechos diferente al de *Colón* v. *Colón*, supra, siendo por tanto aplicable la doctrina de *León* v. *Alvarado* tal como quedó interpretada en *Fontánez* v. *Sierra*, 55 D.P.R. 961.

*Debe declararse el recurso sin lugar y confirmarse la sentencia apelada.*

El Juez Asociado Sr. Todd, Jr., no intervino.