JUANA BURGOS MARTÍNEZ, demandante y apelante, *v.* AURELIA VÁZQUEZ BURGOS, demandada y apelada.

No. 7013.—*Sometido:* Abril 22, 1935. *Resuelto:* Abril 30, 1935.

*Felipe Colón Díaz,* abogado de la apelante; *C. Olivieri y R. Hernández Matos,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Juana Burgos Martínez, en su carácter de madre legítima de Lino Álvarez Burgos solicita que se declare nula la inscripción de nacimiento de Aurelia Álvarez Burgos como hija legítima del mencionado Lino Álvarez Burgos y Monserrate Burgos Santiago. Se pide además que se declare nula e inexistente la sentencia sobre declaratoria de herederos dictada por la Corte de Distrito de Ponce a favor de la referida Aurelia Álvarez Burgos.

Se alega en la demanda que Lino Álvarez Burgos falleció intestado en el pueblo de Santa Isabel el día 6 de septiembre de 1933, sin descendencia legítima o natural reconocida, y dejando como única y universal heredera a su madre legítima Juana Burgos y Martínez; que Lino Álvarez Burgos se casó con Monserrate Burgos Santiago el día 30 de septiembre de 1895, cuyo matrimonio fué disuelto por sentencia de divorcio en 12 de abril de 1909, a petición del esposo Lino Álvarez Burgos; que ocurrido el fallecimiento del referido Lino Álvarez Burgos, la demandada Aurelia Vázquez Burgos, en 2 de octubre de 1933, compareció ante el encargado del registro demográfico de Santa Isabel y se hizo inscribir con el nombre de Aurelia Álvarez Burgos y como hija legítima de Lino Álvarez Burgos y Monserrate Burgos Santiago, haciendo constar que había nacido en 13 de junio de 1897; que con esta inscripción fraudulenta y mediante una copia certificada de la misma compareció ante la Corte de Distrito de Ponce y obtuvo sentencia declarándola única y universal heredera de Lino Álvarez Burgos.

Negó Aurelia Vázquez Burgos los hechos esenciales que sirven de base a la causa de acción ejercitada y, celebrado el juicio correspondiente, la demanda fué desestimada con imposición de costas, gastos y honorarios de abogado a la parte demandante, quien interpuso recurso de apelación contra los pronunciamientos de la corte inferior.

La parte apelada, basándose en que la apelación interpuesta es completamente frívola y en que sólo persigue el propósito de retardar la resolución definitiva de este litigio, solicita que se desestime el recurso y se confirme la sentencia dictada.

Como muy bien dice la demandada, la verdadera controversia en este caso gira sobre la alegada imposibilidad física de Lino Álvarez Burgos para tener acceso con su esposa Monserrate Burgos durante los primeros 120 días de los 300 que precedieron al nacimiento de la hija cuya legitimidad se im-

pugna. Los hechos que la corte inferior declara probados son los siguientes: que allá para el año 1895, la demandante, Juana Burgos Martínez, vivía con su esposo Nicasio Álvarez Torres en el barrio Boca Velázquez de Santa Isabel con sus hijos, entre los cuales figuraba el referido Lino Álvarez Burgos; que también vivía en dicha casa Monserrate Burgos Santiago, sobrina de los esposos Álvarez Burgos y prima de Lino, con quien llevaba relaciones amorosas; que allá para fines de diciembre del año 1895, Monserrate se fugó con Lino, quien la llevó a Santa Isabel a casa de doña Zoila Descartes, donde contrajeron matrimonio en 30 de diciembre de 1895; que a los pocos días Lino se fué con su esposa Monserrate a casa de un hermano de ésta llamado Enrique en el barrio Boca Velázquez, cuya casa estaba a medio kilómetro más o menos de distancia de la casa de los padres de Lino; que Lino iba diariamente a la casa de Monserrate, donde dormía, aunque por el día trabajaba en casa de su padre; que allá para el 13 de junio del año 1897 Monserrate dió a luz una niña, a la que se puso el nombre de Aurelia, que nunca fué inscrita en el registro civil en vida de Lino; que dicha niña nació mientras Lino y Monserrate estaban casados y vivían bajo el mismo techo; que después de tener la niña un año y cuando ya empezaba a andar, Lino llevó su esposa Monserrate a residir a Santa Isabel, donde vivieron varios meses hasta que allá para los años 1901 a 1902 se separó Lino de Monserrate, quien se fué a vivir a casa de una hermana llamada María que vivía maritalmente con Marcial Vázquez en el barrio Calambreñas; que más tarde, allá para el año 1902, viviendo Marcial Vázquez con Rosario Landrón, ésta solicitó de Monserrate que le entregara la niña Aurelia para criarla, a lo que consintió la madre, siempre que se le pidiera el consentimiento a su esposo Lino, lo que hizo Rosario Landrón; que como consecuencia la demandada, siendo niña, vivió durante unos catorce años en casa de Marcial Vázquez y Rosario Landrón, a los que trataba como padres, pues fueron ellos quie-

nes la criaron; que Lino Álvarez obtuvo sentencia de divorcio a su favor y en contra de su esposa Monserrate Burgos en la Corte de Distrito de Ponce el 12 de abril de 1909, sin especificarse en la sentencia la causal de la acción ni hacerse en la misma pronunciamiento alguno sobre hijos habidos en el matrimonio; que después de la separación de Lino Álvarez y Monserrate Burgos, ambos vivieron en concubinato con otras personas, procreando otros hijos, y que Lino Álvarez era un hombre saludable y fuerte, habiendo fallecido el 6 de septiembre de 1933 en Santa Isabel a los 69 años de edad; que el 2 de octubre de 1933, Monserrate Burgos compareció ante el Registro Demográfico de Santa Isabel e inscribió a la demandada como hija legítima suya y de Lino Álvarez, nacida el 13 de junio de 1897; que en 11 de octubre de 1933 la Corte de Distrito de Ponce dictó sentencia declarando única y univeral heredera de Lino Álvarez Burgos a su hija legítima Aurelia Vázquez Burgos; que la demandada, al inscribirse de acuerdo con la ley electoral para las elecciones del año de 1932 en el precinto de Santa Isabel, hizo constar en su petición de 18 de abril de 1932, que su nombre era Aurelia Vázquez Burgos y que sus padres eran Marcial Vázquez y Monserrate Burgos, habiendo explicado que lo hizo así porque se crió en casa de Marcial Vázquez y tenía a éste por padre y así lo trataba y llamaba por agradecimiento, pues su padre Lino Álvarez nunca se ocupó de ella.

Hace constar la corte inferior que no le mereció crédito alguno la prueba de la demandante tendiente a demostrar que Lino abandonó a Monserrate a los pocos días de casados y se fué a vivir a Jayuya, por ser dicha prueba contradictoria, vaga e inconsistente y además por el marcado interés y apasionamiento de los testigos y por haberle merecido entero crédito la declaración de Monserrate Burgos. Tampoco dió crédito la corte inferior a la declaración de Facio Alomar, quien manifestó que Monserrate Burgos vivió en concubinato con Marcial Vázquez, siendo la demandada fruto de dichas rela-

ciones. En cuanto a los testigos de la demandada Marcial Vázquez y Rosario Landrón, dice el Tribunal sentenciador que por su manera de declarar, por su aspecto distinguido y serio, hicieron una impresión profunda y favorable en la mente del juzgador.

De acuerdo con el artículo 108 del Código Civil Español, en vigor cuando nació Aurelia Vázquez Burgos, se presumirán hijos legítimos los nacidos después de los 180 días siguientes al de la celebración del matrimonio y antes de los 300 días siguientes a su disolución o a la separación de los cónyuges. Contra esta presunción no se admitirá otra prueba que la de la imposibilidad física del marido para tener acceso con su mujer en los primeros 120 días de los 300 que hubiesen precedido al nacimiento del hijo.

No hay prueba en los autos para sostener la conclusión de que en este caso Lino Álvarez Burgos estuvo imposibilitado físicamente de tener acceso con su mujer en los primeros 120 días de los 300 que precedieron al nacimiento de la demandada.

Se ha hablado con alguna insistencia de un viaje a Jayuya de Lino Álvarez Burgos, donde según declaran varios testigos de la demandante, permaneció por algún tiempo, y se ha pretendido demostrar con esta prueba la imposibilidad física del marido para tener acceso con su esposa en los primeros 120 días de los 300 que precedieron al nacimiento de la demandada, quien, como se ha dicho, nació en 13 de junio de 1897. Bien podríamos descartar el testimonio de estos testigos, que no mereció crédito alguno a la corte inferior; pero queremos mencionarlo, porque, asumiendo que lo que se ha dicho constituye una expresión de la verdad, esta evidencia, si algo prueba, es precisamente lo contrario de lo que pretende la parte demandante, porque está demostrando claramente que la ausencia, si la hubo, no fué continuada y que no existió la imposibilidad física requerida por la Ley para que el marido tuviese acceso con su esposa. Por el contrario, la misma prueba de la demandante, lejos de rebatir, está robusteciendo

y afirmando la presunción de la legitimidad. Pedro Rivera Burgos, testigo de la demandante, dice que para los meses de enero y febrero de 1897 se trasladó a Jayuya acompañado de Lino Álvarez Burgos y que, según le parece, Lino venía a ver a su familia de Santa Isabel como dos veces al año. Facio Alomar, testigo también de la demandante, declara que Lino estuvo de dependiente en Jayuya y que visitaba Santa Isabel algunas veces, no muchas, sino dos veces al año. Y por último José Álvarez Burgos, hermano de Lino, dice que su hermano estuvo en Jayuya siete u ocho meses y que vino una vez a Santa Isabel a ver a su familia. La prueba demuestra que para la época en que se hace aparecer a Lino Álvarez Burgos como ausente en Jayuya, su esposa Monserrate vivía en un barrio de Santa Isabel, donde dió a luz a su hija, la demandada, muy cerca de la familia Burgos, que según los testigos de la demandante era visitada dos veces al año por el esposo de Monserrate. Esta prueba demuestra claramente las posibilidades que tuvo el marido de acercarse a su esposa y de tener acceso con ella. Además, si como dice Pedro Rivera Burgos, fué en enero o febrero de 1897 que Lino Álvarez se trasladó a Jayuya, no se ha demostrado que este último estuviese ausente en los primeros 120 días de los 300 que precedieron al 13 de junio de dicho año, que fué la fecha en que, según la prueba, nació Aurelia Vázquez. Ésta es en síntesis toda la evidencia producida por la demandante con el propósito de probar que el marido estuvo imposibilitado físicamente de tener acceso con su esposa en los primeros 120 días de los 300 que precedieron al nacimiento de la demandada. Aparte de esta prueba, no hay en los autos ningún otro indicio tendente a demostrar la imposibilidad física requerida por la ley, según la cual, la única prueba admisible contra la presunción de la legitimidad es la de la imposibilidad física del acceso carnal en el período inicial de la vida intrauterina del feto. En ausencia de esta prueba, la presunción de la legitimidad conserva toda su fuerza y vigor.

De parte de la demandada declararon varios testigos, entre los cuales merece mencionarse la esposa de Lino Álvarez, Monserrate Burgos, quien declara que la demandada es hija de ambos y que las relaciones maritales continuaron hasta después del nacimiento de Aurelia, que Lino siempre iba a verla y que del barrio donde vivía se la llevó para el pueblo, donde le puso un cuarto. También declaró la propia demandada sosteniendo su legitimidad.

En *Núñez* v. *Lacot*, 32 D.P.R. 81, se trató de impugnar por la propia madre y por la hija la legitimidad de ésta última, que nació dentro de los 301 días siguientes a la disolución del matrimonio de Carmen Núñez con Luis Maldonado. La madre trató de demostrar que mientras estaba pendiente el pleito de divorcio, Luis Maldonado y ella vivían separados, él en Peñuelas y ella en Ponce, y que no tuvieron acceso carnal. Esta Corte, interpretando el artículo 181 del Código Civil Revisado, equivalente al 108 del Código Civil Español, se expresó así:

"Lo que la apelante trató de demostrar fué que mientras estaba pendiente el pleito de divorcio Luis Maldonado y Carmen Núñez vivieron separadamente, el esposo en Peñuelas y la esposa en Ponce. La apelante cita jurisprudencia al efecto de que cada caso de alegada incapacidad física, o de ausencia, debe juzgarse por sí mismo y que no deben establecerse reglas definidas. Los comentaristas citados hablaban en gran parte de segundos matrimonios y del depósito de la esposa y otras condiciones que no existen en este caso. Nos sentimos obligados a sostener que la demandante Carmen Núñez no ha refutado con éxito la presunción de legitimidad como se consigna en el artículo 181 del Código Civil.

"La apelada en verdad llama la atención al hecho de que vivir en Peñuelas no excluye la posibilidad del contacto físico. Ésta no es la 'ausencia' de que habla el Código Civil o las decisiones de los comentaristas. Peñuelas en la fecha de la concepción de la niña Araceli Núñez era parte del Distrito Judicial de Ponce. Su proximidad ha sido revelada por los mismos testigos del caso. Carmen nació en Peñuelas. Becerra iba frecuentemente allá y uno de los testigos vivía allí. Incumbía a la apelante demostrar la imposibilidad física del contacto.

"Por supuesto que puede uno fácilmente entender la actitud ·de la demandante, asumiendo que sus alegaciones son ciertas. Ella entonces sabría que Araceli no podía ser la hija de Maldonado y que era la hija de Becerra, y vería una injusticia en no permitir que fueran establecidos los verdaderos hechos. La misma Araceli. Núñez, que era una muchacha de dieciséis años, dijo al ser llamada a declarar que una persona sin nombre no es nadie. Ella trataba de probar su verdadero parentesco según ella. Sin embargo, ni los deseos de la madre o de la hija pueden prevalecer. La sociedad, como se expresa en el Código Civil, ha rodeado de fuertes presunciones la legitimidad de los hijos nacidos mientras existe el matrimonio y por trescientos días después de su disolución. Es algo curioso observar la tentativa de la misma hija para destruir la presunción de legitimidad, pero es imposible para esta Corte el hacer excepciones en contra de la letra del Código, por no decir de su espíritu. La apelante dejó de probar un caso dentro de la excepción que claramente menciona el Código."

La Enciclopedia Jurídica Española, en su tomo 17 página 802, dice lo siguiente:

"¿Qué se entiende por *imposibilidad física?* Nuestro exagerado carácter meridional ha pretendido llevar el límite en la práctica, al extremo de sostener que únicamente podía calificarse de tal la impotencia manifiesta anterior a la concepción; pero con razón dijo el Tribunal Supremo que comprende también la ausencia de uno de los cónyuges, es decir, y dando un carácter más general a esta segunda causa, el alejamiento de uno de ellos, o todo lo que signifique una separación real y efectiva de los cónyuges, con tales circunstancias que se estimara imposible la cohabitación; así que el juzgador, en el ejercicio de su apreciación soberana, debe tener en cuenta, no sólo el punto de vista de la distancia que separe a los esposos, sino también las circunstancias propias para determinar que esa distancia no ha podido ser franqueada por ninguno de ellos.

"Igualmente la residencia habitual del marido, lejos del domicilio conyugal, cuando no se demuestra la existencia de impedimentos u obstáculos materiales que alejen toda idea de una aproximación por momentánea que fuera.

"La separación convencional, unida al hecho de vivir los dos cónyuges en una misma población o en dos cercanas, no son bastante para decretar la imposibilidad física de la unión.

"No acepta nuestro derecho la *imposibilidad moral,* que de manera más o menos implícita reconocen otros: así, el alejamiento habitual, el estado ordinario de enfermedad del marido, su edad avanzada o vejez, el adulterio de la mujer, ni aun acompañado de ocultación del embarazo y parto, y aunque la misma declare contra la capacidad y otros accidentes por virtud de los que podría dudarse con fundamento de la paternidad, no bastan porque no excluyen la imposibilidad física mencionada.

"De manera que el menor asomo de duda, impide privar al hijo de la condición de legítimo." .

En igual sentido se expresan los Comentaristas Manresa, Scaevola, Sánchez Román, Díaz Martínez y otros.

El artículo 109 del Código Civil Español, en vigor cuando nació Aurelia Vázquez, dispone que el hijo se presumirá legítimo aunque la madre hubiese declarado contra su legitimidad o hubiese sido condenada como adúltera. No se ha demostrado, sin embargo, que Monserrate Burgos cometiera adulterio antes de separarse de su esposo y durante el período inicial de la vida intrauterina de su referida hija. La prueba de la demandante estuvo muy lejos de convencer a la corte sentenciadora. Se alegó en la demanda que Aurelia Vázquez es hija de Marcial Vázquez. La prueba ofrecida en apoyo de esta alegación no fué creída por la corte inferior, según se hace constar en el curso de esta opinión. En cambio, las declaraciones de Monserrate Burgos, Marcial Vázquez y Rosario Landrón produjeron una impresión favorable en la conciencia del juzgador.

En vista de que la prueba aportada en apoyo de la referida alegación no fué creída por el tribunal *a quo,* nada tenemos que decir acerca de su admisibilidad y de sus efectos y de la aplicación que pudiera tener en relación con la misma el mencionado artículo 109 del Código Civil Español.

*Opinamos que el recurso interpuesto es frívolo y que debe ser desestimado.*

El Juez Asociado Sr. Aldrey no intervino.