José Cubano García, demandante y apelante, *v.* Ana Carmen del Valle, por sí y como madre con patria potestad de su hija Carmen Milagros Cubano del Valle, demandada y apelada.

Núm. 9771.—*Sometido:* Enero 10, 1949.  *Resuelto:* Febrero 15, 1949.

*C. H. Juliá,* abogado de la apelante; *A. Reyes Delgado* y *Luis R. Apellániz,* abogados de la apelada.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Se trata de un caso sobre nulidad de inscripción de nacimiento de un hijo.  Se alega en la demanda que Ana Car-

men del Valle y el demandante contrajeron matrimonio en Manatí el día 5 de marzo de 1942, después de haber sido el demandante acusado del delito de seducción y que desde dicha fecha las partes se separaron sin que hayan tenido relaciones maritales de clase alguna; que el día 8 de noviembre de 1943, la codemandada, Ana Carmen del Valle hizo inscribir e inscribió en el Registro Demográfico de Puerto Rico el nacimiento de la codemandada Carmen Milagros Cubano del Valle, como hija legítima del demandante habida durante el matrimonio y nacida el 4 de noviembre de 1943; que el demandante no es el padre de la referida niña, nacida veinte meses después del matrimonio y de la separación absoluta de los contrayentes; que la demandada Ana Carmen del Valle ha venido y viene sosteniendo relaciones íntimas e ilícitas con otro hombre.

Celebrado el juicio, la corte inferior declaró sin lugar la demanda por entender que, de acuerdo con la prueba, no se demostró, según exige el artículo 113 del Código Civil (ed. 1930)(¹) la imposibilidad física del marido para tener acceso con su mujer en los primeros ciento veinte días de los trescientos que hubiesen precedido al nacimiento del hijo.

El demandante apeló y en este recurso alega que la corte sentenciadora erró al no permitir las declaraciones de Angel Manuel Arroyo y de otro testigo; al no admitir en evidencia el expediente del mismo tribunal sobre el divorcio del demandante y la codemandada y al apreciar la prueba.

Con el testigo Angel Manuel Arroyo el demandante pretendió demostrar relaciones, aparentemente ilícitas, de su esposa con José Maldonado en el año 1942. Se opuso la

---

(¹)El artículo 113 dispone:

"Son hijos legítimos los nacidos después de los ciento ochenta días siguientes al de la celebración del matrimonio y antes de los trescientos días siguientes a su disolución.

"Contra esta legitimidad no se admitirá otra prueba que la imposibilidad física del marido para tener acceso con su mujer en los primeros ciento veinte días de los trescientos que hubiesen precedido al nacimiento del hijo."

demandada y la corte sostuvo la objeción fundándose en que la única prueba admisible en un caso en que se impugna la legitimidad de un hijo es aquélla que tiende a demostrar la imposibilidad física del marido para tener acceso con su mujer a que se refiere el artículo 113 del Código Civil, supra. Como ejemplos de dicha imposibilidad enumeró la ausencia, la impotencia por cualquier enfermedad, la prisión o la muerte del marido.

No erró la corte al no admitir dicha prueba. No está autorizada su admisión por el artículo 113, el cual expresamente prohibe su admisión, ya que el adulterio de la esposa no implica imposibilidad física del marido para tener acceso con su mujer. Aun cuando de nuestro código fué eliminado el artículo 109 del Código Civil de España que provee que "El hijo se presumía legítimo, aunque la madre hubiese declarado contra su legitimidad o hubiese sido condenada como adúltera", el comentario que hace Manresa a la última parte de dicho artículo, expone, a nuestro juicio, la razón de por qué prueba de adulterio no debe ser admitida, bajo el precepto de nuestro artículo 113, supra. Dice dicho autor al Tomo I, pág. 504 de sus Comentarios al Código Civil (quinta edición): "Pero hay otra razón más poderosa que obliga a rechazar la prueba de confesión o adulterio probado, y es que el momento de la concepción no se puede determinar cuando una mujer cohabita en una misma época con dos hombres, ni puede ella misma conocer cuál de ellos engendró al hijo, que bien pudiera ser del padre...."

■■ No se cometió el primer error, y tampoco el segundo, pues si bien la corte no admitió el expediente de la acción de divorcio, visto y resuelto antes de verse y resolverse la presente acción, aunque ésta se inició con anterioridad a aquélla, al resolver el presente caso el juez se refirió a la opinión emitida al dictar la sentencia de divorcio para explicar una aparente contradicción en cuanto a

la credibilidad que le mereció cierta prueba en uno y otro caso. La cuestión fué la siguiente: en la acción de divorcio por la causal de separación la codemandada declaró que había tenido relaciones carnales con su marido en una ocasión durante el transcurso de los tres años. El demandante lo negó y la corte en su opinión dijo que no había quedado convencida de ese hecho. En el presente caso la codemandada de nuevo declaró sobre las relaciones íntimas que había tenido un día con el demandante y la declaración de una tía suya tendió a corroborar que el demandante había ido a buscar a la demandada dicho día. La corte, en el presente caso, se expresó así:

"Se alegó también que en la segunda demanda de divorcio presentada por él, se dictó sentencia por separación de más de tres años, y que esta Corte no dió crédito entonces a la prueba sobre el encuentro entre ambos donde ella alega hubo el contacto carnal. La prueba ahora fué más corroborada. . . . . .

"En dicho juicio de divorcio, ella declaró lo mismo que en el caso presente, sobre el contacto carnal, y por eso dijimos que ella trataba de justificar el nacimiento de la hija, en el sentido de explicar a la Corte por qué la tenía a pesar de no haber vivido con el esposo.

"No estábamos entonces resolviendo sobre la paternidad, y aun si ahora tuviésemos la misma duda, a falta de una prueba robusta sobre la imposibilidad física del demandante para tener acceso a su mujer, tendríamos que fallar a favor de la demandada y en bien de la niña."

El hecho de que la corte, en dos acciones distintas, aprecie la declaración de un testigo sobre determinado hecho en forma distinta, no constituye necesariamente error, especialmente cuando en la segunda acción hay otra prueba que, en alguna forma, tiende a corroborar dicha declaración.

Por último, sostiene el apelante que la corte erró al apreciar la prueba. Hemos examinado detenidamente la transcripción de la evidencia y estamos convencidos de que la presentada por el demandante no demostró su imposibilidad física para tener acceso con su mujer. El hecho de

que se separaran después de contraído matrimonio el 5 de marzo de 1942, quedándose ella en Manatí y trasladándose él, según declaró el demandante, a Arecibo en abril de 1942, no es suficiente para dejar establecida dicha imposibilidad y además, existe la declaración de la codemandada, creída por la corte, de que el 25 de marzo de 1943 tuvo contacto carnal con el demandante. La niña nació el 4 de noviembre de 1943, o sea después de los ciento ochenta días siguientes al de la celebración del matrimonio y antes de los trescientos días siguientes a su disolución que establece el artículo 113, supra.

Como bien dijo la corte inferior: ''Era el demandante el que tenía que probar en este caso dicha imposibilidad. Lejos de eso, se demostró que él vivía en el mismo pueblo de Manatí al tiempo de la concepción de la niña, es decir, que ni siquiera la ausencia puede ser causa para justificar una nulidad.''

En el caso de *Núñez* v. *Lacot,* 32 D.P.R. 81, se probó que los esposos estaban separados, viviendo él en Ponce y ella en Peñuelas, y resolvimos que esa prueba no era suficiente para establecer la ausencia como motivo de la imposibilidad física y para rebatir la presunción de legitimidad de la hija. El caso de autos es más fuerte, pues las partes vivían en Manatí y además la corte consideró probado afirmativamente que hubo las relaciones íntimas entre los esposos en determinada fecha.

*Habiendo dado crédito la corte inferior a la prueba de la codemandada en este caso, y no estando satisfechos de que al así hacerlo actuara movida por pasión, prejuicio o parcialidad, como argumenta el apelante en su alegato, procede la confirmación de la sentencia.*