ANGÉLICA CHABRÁN HERNÁNDEZ, madre con patria potestad, en representación de su hijo menor de edad, ZOILO EDUARDO CHABRÁN, demandante y apelante, *v.* ZOILO MÉNDEZ RÍOS, demandado y apelado.

Número 10760.

*Sometido:* 6 de abril de 1953. *Resuelto:* 24 de abril de 1953.

*Diego O. Marrero,* abogado de la apelante; *Antonio Figueroa Rivera,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del tribunal.

Se trata de una demanda de filiación y alimentos radicada en el anterior Tribunal de Distrito de Puerto Rico, Sección de San Juan, el 24 de noviembre de 1950 por Angélica Chabrán Hernández, en representación de su hijo menor Zoilo Eduardo Chabrán, contra Zoilo Méndez Ríos. Trasladado el caso a la sección de Humacao de dicho tribunal de distrito, el demandado radicó su contestación y posteriormente una moción solicitando la desestimación de la demanda. El demandado acompañó a su moción varias certificaciones acreditativas de que Angélica Chabrán estaba casada con Frank Chaulón desde 1936; que se divorció de éste el 26 de enero de 1945; y que Zoilo E. Chabrán nació el 23 de junio de 1945. En su moción de desestimación el demandado sostenía que bajo estos hechos se presume que el menor es hijo legítimo de Angélica Chabrán y de Chaulón, a tenor con las disposiciones del artículo 113 del Código Civil, ed. 1930. (¹) En su consecuencia el demandado alegaba que la demanda no aducía hechos suficientes para constituir una causa de acción en su contra.

(¹) El artículo 113 prescribe: "Son hijos legítimos los nacidos después de los ciento ochenta días siguientes al de la celebración del matrimonio y antes de los trescientos días siguientes a su disolución.

"Contra esta legitimidad no se admitirá otra prueba que la imposibilidad física del marido para tener acceso con su mujer en los primeros ciento veinte días de los trescientos que hubiesen precedido al nacimiento del hijo."

Antes de que el tribunal sentenciador pudiera resolver la moción de desestimación, la demandante radicó una demanda enmendada en la que alegaba que Angélica Chabrán se había separado de su esposo desde el 1941; que en 1943 éste entabló demanda de divorcio contra Angélica Chabrán por la causal de abandono por más de un año; que en 1944 Angélica Chabrán accedió a los requiebros amorosos de Zoilo Méndez, trayendo como resultado el nacimiento de Zoilo E. Chabrán el 23 de junio de 1945, después de haber Chaulón obtenido el 26 de enero de 1945 sentencia de divorcio en el caso radicado por él en 1943; que después de Angélica Chabrán haber recabado infructuosamente durante más de cinco años de Zoilo Méndez que le reconociera a Zoilo E. Chabrán como hijo suyo, el 19 de octubre de 1950 Angélica Chabrán inscribió el niño en el Registro Demográfico como su hijo natural; que más tarde Chaulón radicó demanda contra la aquí demandante ante la sección de San Juan del anterior Tribunal de Distrito de Puerto Rico, impugnando la legitimidad del menor; y que como resultado de las admisiones contenidas en la contestación de la demandante, la sección de San Juan del anterior tribunal de distrito dictó sentencia declarando que Zoilo E. Chabrán era hijo natural de Angélica Chabrán.

Más tarde el demandado Zoilo Méndez radicó en el presente pleito de filiación ante la sección de Humacao una moción sobre sentencia sumaria. Aquí el demandado nuevamente estableció mediante las correspondientes certificaciones que bajo el artículo 113 del Código Civil se presumía que Zoilo E. Chabrán era hijo legítimo de Angélica Chabrán y de Chaulón, en vista del hecho de que el referido menor nació antes de que expiraran los 300 días de haberse disuelto el matrimonio. Pero el demandado se confronta ahora con la sentencia del pleito de la sección de San Juan impugnando la legitimidad de Zoilo E. Chabrán. Trató el demandado de evadir el efecto de esta sentencia bajo dos fundamentos. En apoyo del primero, radicó varias certificaciones demostrativas

de que el nacimiento de Zoilo E. Chabrán se inscribió en el Registro Demográfico el 19 de octubre de 1950, y que Chaulón inició su pleito en la sección de San Juan impugnando la legitimidad de Zoilo E. Chabrán el 29 de enero de 1951. Toda vez que el pleito se radicó a los 102 días después de la inscripción, la primera contención del demandado en su moción sobre sentencia sumaria fué que el derecho de Chaulón a impugnar la legitimidad de Zoilo E. Chabrán a tenor con el artículo 113 del Código Civil había prescrito, en vista de las disposiciones del artículo 117 del mismo cuerpo legal. (²)

En apoyo de su segundo fundamento para sentencia sumaria, el demandado presentó copias certificadas de la demanda, contestación y sentencia de la sección de San Juan en el caso sobre impugnación de legitimidad. Según el demandado, estos documentos demostraban que el referido pleito fué radicado exclusivamente contra Angélica Chabrán en su capacidad individual y no contra ella como representante de su hijo menor, Zoilo E. Chabrán. El demandado sostenía que el menor era la única parte indispensable en el pleito sobre impugnación de legitimidad; que la sentencia dictada por la sección de San Juan con consentimiento de las partes contra Angélica Chabrán en su capacidad individual era por consiguiente nula e ineficaz; y que el demandado en el pleito de filiación de Humacao podía atacar colateralmente la sentencia del pleito sobre impugnación de legitimidad de San Juan, no obstante el hecho de que el demandado en el presente caso no era parte en aquél, debido a su interés en el pleito de filiación de Humacao que se caería de ser nula la sentencia en el caso sobre impugnación de legitimidad de San Juan.

El 12 de febrero de 1952 la demandante radicó en la sección de Humacao una oposición a la moción del demandado

---

(²) El artículo 117 dice así: "La acción para impugnar la legitimidad del hijo deberá ejercitarse dentro de los tres meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis meses si estuviere fuera de Puerto Rico, a contar desde que tuvo conocimiento del nacimiento "

solicitando sentencia sumaria. El 21 de febrero de 1952 la demandante radicó una moción solicitando del tribunal que pospusiera la resolución de la referida moción sobre sentencia sumaria. En esta solicitud de posposición la demandante manifestaba (1) que aun cuando ella creía que la sentencia de la sección de San Juan era válida, era preferible que el tribunal de San Juan "enmendara su sentencia" y con ello subsanara cualquier posible defecto de procedimiento en el recurso radicado ante dicha sala, y (2) que la demandante podía obtener que la sección de San Juan actuara sobre el particular dentro de mes y medio. Con la objeción del demandado, la sección de Humacao declaró con lugar la solicitud de posposición de la demandante, concediéndole un término hasta el 7 de abril de 1952 para radicar una sentencia enmendada de la sección de San Juan.

El 4 de abril de 1952 la demandante radicó una moción en el caso de filiación de Humacao alegando que Zoilo Méndez había radicado una solicitud de intervención en el pleito sobre impugnación de legitimidad de San Juan y que esta actuación del demandado había dilatado el recurso de San Juan.[3] La demandante por consiguiente solicitó de la sección de Humacao que pospusiera la resolución de la moción sobre sentencia sumaria del demandado hasta que la sección de San Juan resolviera la moción de la demandante para "enmendar la sentencia" en el pleito de San Juan sobre impugnación de legitimidad.

El 16 de mayo de 1952 el demandado radicó una moción en la sección de Humacao pidiéndole que resolviera su moción de sentencia sumaria en el pleito de filiación. En esta moción el demandado dice (1) que en vista de la muerte el 25 de marzo de 1951 de Frank Chaulón, el demandante original en el caso de impugnación de legitimidad, sus hijos, Frank Chaulón, Jr. y María Elisa Chaulón, habían radicado documentos en la sección de San Juan para "corregir la sentencia"

---

[3] Esta solicitud de intervención no aparece de los autos ante nos.

por ella dictada; y (2) que el 18 de abril de 1952 María Elisa Chaulón se retiró del pleito, dejando a Frank Chaulón, Jr. como la única persona interesada en "enmendar la sentencia". (⁴)

La sección de Humacao señaló la moción sobre sentencia sumaria para el 26 de mayo de 1952. El demandado compareció a la vista y argumentó la referida moción. La demandante no compareció y el 18 de junio de 1952 la sección de Humacao declaró con lugar la moción del demandado sobre sentencia sumaria. (⁵) La sección de Humacao del anterior tribunal de distrito no consideró el primer punto levantado en la moción de sentencia sumaria; v.g., que la causa de acción de Chaulón en el pleito sobre impugnación de legitimidad había prescrito antes de que éste lo radicara. Sin embargo, el tribunal sentenciador convino con el segundo fundamento de la moción al efecto de que la sentencia en el pleito sobre impugnación de legitimidad era nula porque la sección de San Juan no había adquirido jurisdicción del verdadero demandado, Zoilo E. Chabrán. De conformidad, declaró con lugar la moción del demandado sobre sentencia sumaria. El caso se encuentra ahora ante nos en apelación interpuesta por la demandante contra la referida sentencia.

■ Examinemos primeramente la cuestión de si Zoilo Méndez, quien no fué parte en el pleito sobre impugnación de legitimidad, puede atacar colateralmente la sentencia dictada en dicho caso. Una sentencia puede atacarse colateralmente por una persona que no fué parte en el pleito, por el funda-

---

(⁴) De los autos no aparecen estos documentos radicados por Frank Chaulón, Jr. y María Elisa Chaulón.

(⁵) Una moción de la demandante para que se pospusiera la vista de la moción del demandado solicitando sentencia sumaria llegó a manos del juez sentenciador cuando terminaba de dictar la sentencia sumaria. La moción de posposición afirmaba que la notificación del señalamiento de la vista para el 26 de mayo se había enviado erróneamente a la anterior dirección de su abogado y que éste no la recibió hasta el 11 de junio. El juez sentenciador manifestó en un escolio a la sentencia sumaria que la notificación se le envió al abogado a la única dirección que constaba en autos, y que de todos modos él entendía que no procedía la posposición.

mento de que la misma es nula por haber sido dictada por una corte que carecía de jurisdicción sobre una parte indispensable, siempre que dicha sentencia afecte adversamente a tal persona. *Cancel* v. *Martínez*, ante pág. 108; *Ríos* v. *Román*, 71 D.P.R. 207; *Pérez* v. *Tribunal de Distrito*, 70 D.P.R. 656; *Suárez* v. *Betancourt*, 64 D.P.R. 469, 472; *Mitchell* v. *Automobile Owners I. Underwriters*, 118 P.2d 815 (Cal., 1941); *Arenas* v. *United States*, 95 F.Supp. 962, 970–71 (Cal., 1951), confirmado en 197 F.2d 418 (C.A. 9, 1952); *Restatement, Judgments*, sec. 93, págs. 459 *et seq.*; 1 Freeman, *Judgments*, 5ta. ed., sec. 319, págs. 636, 639. Por tanto, antes de que discutamos la validez de la sentencia dictada en el pleito sobre impugnación de legitimidad, debemos convencernos primeramente de que Zoilo Méndez fué afectado adversamente por dicha sentencia.

■ En apoyo de su contención de que Zoilo Méndez no fué adversamente afectado por la sentencia en el pleito sobre impugnación de legitimidad, la demandante arguye que la sentencia de la sección de San Juan al efecto de que el menor no era hijo legítimo, no resuelve que Zoilo E. Chabrán sea hijo natural de Zoilo Méndez; que una adjudicación a ese efecto sólo puede hacerse por la sección de Humacao en el pleito de filiación; y que el demandado tendrá su día en corte en dicho caso de filiación. Pero el hecho de que el demandado siempre tendrá la oportunidad de demostrar en el pleito de filiación que Zoilo E. Chabrán no es su hijo natural, no es concluyente sobre la cuestión ante nos. Debemos tener en cuenta que bajo el artículo 116 del Código Civil sólo el marido o sus legítimos herederos pueden impugnar la legitimidad del hijo.(⁶) *Pueblo* v. *Santiago*, 70 D.P.R. 837; *Dejol* v.

---

(⁶) El artículo 116 dispone: "La legitimidad puede ser impugnada solamente por el marido o sus legítimos herederos. Éstos sólo podrán impugnar la legitimidad del hijo en los casos siguientes:

"1. Si el marido hubiese fallecido antes de transcurrir el plazo señalado para deducir su acción en juicio.

"2. Si muriese después de presentada la demanda sin haber desistido de ella.

"3. Si el hijo nació después de la muerte del marido."

*Johnson,* 12 La.Ann. 853 (1857); *Ex parte Madalina,* 164 Pac. 348 (Cal., 1917). La sección de Humacao en su consecuencia hubiera estado obligada a desestimar inmediatamente el presente pleito de filiación, a no ser por la sentencia de la sección de San Juan en el caso sobre impugnación de legitimidad. En otras palabras, es necesaria una sentencia válida a favor del demandante en el pleito sobre impugnación de legitimidad para poder abrirle la puerta en la sección de Humacao al pleito de filiación. De esto surge que, como la demandante descansa en la sentencia de la sección de San Juan en el pleito sobre impugnación de legitimidad para acudir a los tribunales con el pleito de filiación contra Zoilo Méndez, los intereses de éste fueron adversamente afectados por la sentencia de San Juan. Resolver lo contrario podría estimular la colusión o el fraude—aun cuando en forma alguna queremos insinuar que existen en este caso—en la radicación y resolución de pleitos referente a este problema social altamente sensitivo alrededor del cual la Asamblea Legislativa ha erigido un número de salvaguardas, según constan en el artículo 116 y en otros del Código Civil. *Cf. Pabón* v. *Alvarado et al.,* 28 D.P.R. 579, 585. Por tanto, resolvemos que si bien Zoilo Méndez no fué parte en el pleito sobre impugnación de legitimidad ante la sección de San Juan, cuando se invoca la sentencia a favor del demandante en dicho pleito como condición precedente necesaria al pleito de filiación en su contra ante la sección de Humacao, Méndez queda afectado adversamente por dicha sentencia y por consiguiente tiene derecho a atacar colateralmente dicha sentencia probando, de serle posible, que la referida sentencia es nula porque el menor, parte indispensable, nunca fué incluído como demandado en el pleito sobre impugnación de legitimidad. Véase *Old Colony Trust Co.* v. *Porter,* 88 N.E.2d 135 (Mass., 1949).

 Pasemos ahora a los méritos de la contención de Zoilo Méndez al efecto de que la sentencia en el pleito sobre

impugnación de legitimidad es nula. Ambas partes convienen en que el menor, cuyo *status* estaba en controversia, era parte indispensable y que la madre era a lo sumo una parte demandada apropiada. *Dejol* v. *Johnson*, supra; *Succession of Saloy*, 44 La. Ann. 433, 442 (1892); *Ducasse's Heirs* v. *Ducasse*, 45 So. 565 (La., 1908); 17 Enciclopedia Jurídica Española 805; véanse *Cubano* v. *Del Valle*, 69 D.P.R. 579; *Burgos* v. *Vázquez*, 48 D.P.R. 416; *Núñez* v. *Lacot*, 32 D.P.R. 81; *Pabón* v. *Alvarado et al.*, supra. No obstante, se admite que si el pleito fué radicado y proseguido hasta dictarse sentencia contra la madre únicamente, la sentencia declarando al menor hijo ilegítimo era nula, porque no se incluyó como demandado a una parte indispensable, el menor. *Fuentes* v. *Tribl. de Distrito*, 73 D.P.R. 959; *Cancel* v. *Martínez*, supra; *Pueblo* v. *Henneman*, 61 D.P.R. 189; Reglas 19 y 20, de las de Enjuiciamiento Civil; *Amann* v. *Burke*, 186 So. 769 (Ala., 1939); *Thieman Bros.* v. *Bodine*, 202 S.W.2d 912 (Mo., 1947); *Samter* v. *Klopstock Realty Co.*, 88 P.2d 250 (Cal., 1939); 3 Moore's *Federal Practice*, 2da. ed., págs. 2145–47, 2205. De esto surge que procede el ataque colateral de Zoilo Méndez contra la sentencia en el pleito sobre impugnación de legitimidad, si convenimos con él en que el menor nunca fué parte en el procedimiento.

■ Afirma la demandante que de las alegaciones aparece que el menor de hecho era una parte demandada en el pleito sobre impugnación de legitimidad. No estamos de acuerdo. El título dice "Frank Chaulón, demandante *v.* Angélica Chabrán, demandada." Nada hay en él que indique que se demandaba a Angélica Chabrán en su capacidad representativa con patria potestad sobre su hijo. El cuerpo de la demanda es al mismo efecto. Al exponer los hechos que él alega le dan derecho a una sentencia, el demandante, Frank Chaulón, se refiere a través de toda la demanda a *Angélica Chabrán* como la demandada. La súplica de la demanda es al efecto de que

"se sirva decretar la ilegitimidad del menor Zoilo Eduardo Chabrán haciendo constar asimismo que dicho menor es hijo natural de la demandada Angélica Chabrán." La demanda aparece firmada por el abogado del demandante, Frank Chaulón. Dicho abogado era para ese tiempo socio del abogado de la demandante en el caso de filiación, Angélica Chabrán, en representación del menor. Dos días después de radicarse la demanda en el caso sobre impugnación de legitimidad, Angélica Chabrán radicó *por derecho propio* una contestación como demandada. La contestación admite las alegaciones de la demanda, suplica se dicte sentencia declarando a Zoilo E. Chabrán hijo natural de Angélica Chabrán, y renuncia el derecho de apelación. Entonces el demandante solicitó sentencia a su favor por las alegaciones, a lo que la sección de San Juan accedió, luego de interrogar a Angélica Chabrán personalmente en la vista de la moción y de cerciorarse una vez más de que ella, la demandada, admitía todos los hechos alegados en la demanda.

Cuando examinamos las alegaciones y otras circunstancias del caso sobre impugnación de legitimidad, teniendo en cuenta que el menor es una parte indispensable y la madre a lo sumo una parte apropiada, no podemos ver sobre qué base podamos resolver que Angélica Chabrán compareció en el pleito sobre impugnación de legitimidad en representación de su hijo. Por el contrario, todo lo que ella dijo e hizo demuestra que actuaba en su capacidad individual. Al llegar a esta conclusión, nuestros puntos de vista no son producto de meras cuestiones de alegaciones defectuosas o de dialéctica. Repetidamente hemos dicho en años recientes—y lo volvemos a repetir ahora—que hasta donde sea posible no deben frustrarse derechos sustantivos de las partes debido a sutilezas de distinción en las alegaciones. Véanse *Meléndez* v. *Iturrondo*, 71 D.P.R. 60, y opinión concurrente, pág. 64; *Serra* v. *Autoridad de Transporte*, 68 D.P.R. 626, 629. Pero los casos en que hemos

hecho caso omiso de supuestos defectos importantes de forma en las alegaciones, en la mayoría han sido recursos en que pudimos encontrar en las alegaciones alguna indicación de que un *demandante* había correctamente instituído un pleito en representación ya fuere por daños pertenecientes a la sociedad de gananciales o de filiación. *Meléndez* v. *Iturrondo*, supra; *Maldonado* v. *Quetell*, 68 D.P.R. 420. Aquí no tenemos tales defectos de forma hechos por el *demandante* en sus propias alegaciones. Por el contrario, el demandante, Frank Chaulón, optó por demandar únicamente a Angélica Chabrán en su capacidad individual como demandada. El demandante tenía derecho a incluir a Angélica Chabrán en su demanda; pero venía obligado a incluir al menor como parte demandada indispensable. Esto nunca se hizo. Tampoco fué el menor jamás emplazado según lo exige la Regla 4(*d*)(2) de las de Enjuiciamiento Civil. Véase *Biaggi* v. *Corte*, 68 D.P.R. 407. Por el contrario, dos días después de radicarse la demanda, Angélica Chabrán, compareciendo sin abogado, admitió a nombre propio las alegaciones en cuanto a ella. No podemos interpretar esta conducta de su parte como realizada en representación de su hijo cuando (1) la cuestión envuelta era la defensa contra una imputación de ilegitimidad y no como en el caso de *Quetell* la reclamación como demandante de un *status* y (2) los intereses del menor y de la madre, ambos partes demandadas apropiadas, podrían estar en conflicto, véase *Biaggi* v. *Corte*, supra. Por tanto, resolvemos que el menor nunca fué parte en el pleito sobre impugnación de legitimidad.

Ya hemos resuelto que una sentencia dictada sin jurisdicción sobre una parte indispensable, como lo era el menor en el pleito sobre impugnación de legitimidad, es nula y está sujeta a ataque colateral por Zoilo Méndez en el presente caso de filiación porque él fué adversamente afectado por la sentencia en el caso sobre impugnación de legitimidad. En su

consecuencia, la corte sentenciadora no cometió error al declarar con lugar la moción del demandado sobre sentencia sumaria en este caso. (⁷)

■ La demandante se queja, sin embargo, de que la sección de Humacao cometió error al actuar festinadamente sobre la moción del demandado sobre sentencia sumaria. Arguye que la corte debió haber declarado con lugar su moción de nueva posposición hasta que la sección de San Juan pudiera actuar a solicitud suya para "corregir la sentencia" en el caso sobre impugnación de legitimidad. Diferimos de este argumento de la demandante. Los hechos expuestos al principio de esta opinión demuestran que la sección de Humacao fué liberal con la demandante al dejar pendiente la moción de sentencia sumaria durante el término solicitado por la propia demandante, con el fin de obtener de la sección de San Juan aquella acción correctiva que la demandante tuviera en mente. Toda vez que de los autos no constan los documentos que a dicho fin radicó la demandante ante la sección de San Juan, no tenemos medio de conocer exactamente qué gestiones hizo la demandante ante la sección de San Juan. No podemos resolver, bajo las circunstancias de este caso, que la sección de Humacao venía obligada a esperar más tiempo del que esperó antes de resolver la moción del demandado sobre sentencia sumaria.

■ Toda vez que este caso trata del *status* de un menor, creemos conveniente indicar que la sentencia sumaria a favor del demandado, que ahora confirmamos, no impedirá un futuro pleito de filiación de la demandante contra el demandado por el fundamento de *res judicata*. El principio que entra en juego aquí se expone en el *Restatement, Judgments*, sección

---

(⁷) De ordinario se hace un ataque colateral contra una sentencia en un pleito distinto cuando una de las partes en el segundo caso reclama los *beneficios* de la sentencia dictada en el primero. Aquí tenemos la singular situación de una parte *perdidosa* en el primer caso tratando en el segundo pleito de *descansar* en la sentencia dictada *en su contra* en el primero. Pero este cambio del rol común de las partes no altera los principios de derecho aquí envueltos.

54, pág. 211, como sigue: "Cuando se dicta sentencia a favor de un demandado por el fundamento de que no existe un hecho esencial a la causa de acción del demandante, éste no está impedido de radicar otro pleito al surgir luego ese hecho." En el Comentario *c* a la sección 54, aparece lo siguiente a la pág. 213: "La regla expuesta en esta sección es aplicable cuando la responsabilidad del demandado depende de que suceda algún evento. En tal caso si el demandante insta su acción antes de que el evento ocurra, y se dicta sentencia a favor del demandado por dicho motivo, el demandante no está impedido de instar una acción después de ocurrido el evento."

La doctrina aquí envuelta también se expone en 2 Freeman, *Judgments*, 5ta. ed., donde el autor dice a las págs. 1501–4:

"Cuando se litiga directamente un derecho o título, las partes vienen obligadas a presentar toda cuestión o fundamento que podría usarse para establecerlo o atacarlo, y su adjudicación impedirá que se relitigue el mismo derecho o título basado en otra o diferente evidencia o fundamentos que pudieron presentarse en la primera acción. Aun evidencia nueva, según se distingue de un nuevo hecho último, no cambia la situación. *Pero de la regla de que una adjudicación no afecta reclamaciones que las partes no tuvieron oportunidad de litigar, resulta que ninguna sentencia o decreto puede perjudicar derechos que no le surgieron a ninguna de las partes al momento en que la misma se dictó.* Una decisión de que existe un derecho, o de que se ha cometido un acto torticero, deja a la parte en libertad de demostrar en ocasión futura que desde que se dictó la decisión el derecho ha expirado o se ha reparado el daño. *Y lo mismo es cierto con respecto a una decisión de que no existe derecho o causa de acción alguna; ésta no impide una segunda acción cuando hechos nuevos han creado un derecho o causa de acción. Es inmaterial el hecho de que estuviera envuelto el mismo asunto en la primera acción* . . . .

"Bajo ningunas circunstancias puede una sentencia o decreto afectar derechos que no existían entonces. *Este principio es la base de la regla de que la negativa del remedio, por haberse presentado la acción prematuramente, no es en los méritos y por consiguiente no constituye impedimento.* 'El impedimento de

una sentencia se extiende sólo a los hechos tal cual éstos existían al tiempo de dictarse la sentencia, y en cuanto a los derechos legales y relaciones de las partes, según los fijaban los hechos así adjudicados; y cuando intervienen nuevos hechos, antes de la segunda acción, que proporcionan nueva base para las reclamaciones y defensas de las respectivas partes, las cuestiones ya no son las mismas y en su consecuencia no puede alegarse que la primera sentencia es un impedimento.' ...

"Cuando las adjudicaciones que afectan el *status* de las partes están gobernadas por los principios de *res judicata,* cuando las condiciones de consideraciones sobre las cuales este *status* se determina pueden variar de tiempo en tiempo, *una adjudicación, si bien indudablemente concluyente en cuanto a la situación al tiempo en que se hizo, no impide una nueva adjudicación basada en condiciones que posteriormente cambiaron. Esto es cierto en cuanto a personas menores de edad,* dementes o incapaces. ..." (Bastardillas nuestras.)

Al mismo efecto, *Harris* v. *Flack,* 124 N.E. 377 (Ill., 1919); *People* v. *Ocean Shore R. R.,* 196 P.2d 570 (Cal., 1948); *West Side R. R. Co.* v. *Pittsburgh Cons. Co.,* 219 U.S. 92; *Blair* v. *Commissioner,* 300 U.S. 5; *State Farm Ins. Co.* v. *Duel,* 324 U.S. 154, 162; casos citados en 30 Am. Jur. pág. 943, nota 20; *Developments in the Law—Res Judicata,* 65 Harv.L.Rev. 820, 836-37. Véanse *Avellanet* v. *Porto Rican Express Co.,* 64 D.P.R. 693, 710; *Tesorero* v. *Tribl. Contribuciones y del Toro,* 72 D.P.R. 617, 626; *Gelpí* v. *Tugwell,* 123 F.2d 377 (C.A. 1, 1941). Cf. *United States* v. *Silliman,* 167 F.2d 607 (C.A. 3, 1948); *Hornstein* v. *Kramer Bros. Freight Lines,* 133 F.2d 143 (C.A. 3, 1943); *Bruszewski* v. *United States,* 181 F.2d 419 (C.A. 3, 1950); *Perkins* v. *Benguet Consol. Mining Co.,* 132 P.2d 70 (Cal., 1942).

Como indican los anteriores casos, una sentencia a favor del demandado, que se basa únicamente en el fundamento de que la acción se instó antes de que ocurriera un evento que es requisito de la causa de acción en que se basa el pleito, no sostendría una alegación de *res judicata* contra un segundo pleito instado por el demandante después que ha ocurrido el evento necesario. Potencialmente, ésta es exactamente la situación

en el caso de autos. El demandado no ha ganado este pleito porque la corte sentenciadora ya ha resuelto en los méritos que Zoilo E. Chabrán no es su hijo natural. Por el contrario, la única razón por la cual sale victorioso en éste es debido a que el artículo 113 del Código Civil levanta una presunción de legitimidad; que bajo el artículo 116 solamente el marido o sus legítimos herederos pueden impugnar dicha legitimidad; y que la demandante no puede presentar una sentencia válida declarando que el hijo es ilegítimo. En su consecuencia existe un impedimento a la acción de filiación *en este momento*. En pocas palabras, el presente caso de filiación es prematuro. Pero la situación legal puede cambiar: el impedimento contra una acción de filiación puede eliminarse en el futuro mediante una sentencia válida en un caso de impugnación de legitimidad. De ocurrir esto, bajo el principio que acabamos de enunciar, la doctrina de *res judicata* no impediría una nueva acción de filiación por la demandante contra el demandado, basada en una situación legal cambiada, siempre y cuando no esté prescrita en virtud del artículo 126 del Código Civil.(⁸)

No nos incumbe decir si el *status* de Zoilo E. Chabrán debe dejarse como está al presente. Pero no podemos cerrar los ojos a la realidad social de que, no importa cuáles hayan sido las costumbres de nuestro pueblo en el pasado, hoy en día algunas personas en esta comunidad prefieren la verdad en cuanto a su verdadero status antes que una legitimidad ficticia. *Cf. Núñez* v. *Lacot*, supra, pág. 83. Angélica Chabrán, en representación de su hijo, ha dejado ver claramente al instar acción de filiación contra Zoilo Méndez, que para ella el status de ilegitimidad para su hijo no es tan serio como

---

(⁸) Para una reciente interpretación en cuanto al artículo 126 del Código Civil, véase *Fuentes* v. *Tribl. de Distrito*, 73 D.P.R. 959.

La regla sobre *res judicata* establecida en *Calaf et al.* v. *Calaf*, 17 D.P.R. 198, confirmado en 232 U. S. 371, y *Aguilera* v. *Pérez*, 51 D.P.R. 1, citado en la nota 3 del caso de *Fuentes* v. *Tribl. de Distrito*, supra, es obviamente distinguible del presente. Véase 65 Harv. L. Rev. 820, 836–37.

la pérdida de los derechos de éste como supuesto hijo natural de Zoilo Méndez. Sin embargo, la Asamblea Legislativa le ha colocado un obstáculo en el camino—el artículo 116 del Código Civil. Por consiguiente, el menor no puede proseguir con el asunto a menos y hasta que los herederos legítimos de Frank Chaulón tomen alguna acción bajo el artículo 116.

▮▮▮▮▮ Nuevamente debido a que se trata del status de un menor, creemos conveniente hacer algunos comentarios que serán pertinentes solamente si los herederos legítimos de Frank Chaulón intentan hacer valer sus derechos bajo el artículo 116. Convenimos, según resolvió la corte inferior, que no hay forma de "corregir la sentencia" en el caso de impugnación de legitimidad, sin enmendar las alegaciones, en vista de que no se incluyó a Zoilo E. Chabrán como demandado en el pleito original. Por otro lado, cuando está envuelto el status de un menor, creemos que a las partes debe dársele toda oportunidad razonable de presentar prueba sobre los hechos y de obtener una decisión en los méritos. Por tanto no vemos objeción alguna a que se renueve la contención de los herederos legítimos de Chaulón de que el hijo no es legítimo. Si uno de los herederos rehusa ser demandante en tal pleito sobre impugnación de legitimidad, no vemos motivo alguno por el cual esto impida a los otros herederos de proseguir con su acción bajo el artículo 116 del Código Civil. Habiéndose cumplido la política restrictiva de la ley que hay detrás del artículo 116, requiriendo que por lo menos uno de los herederos comparezca voluntariamente en tal pleito, los otros herederos pueden, como en otras situaciones, ser incluídos como demandados si rehusaren comparecer como demandantes. Véase la Regla 19(a) de las de Enjuiciamiento Civil; *Vega* v. *Cía. Popular de Transporte*, 72 D.P.R. 525. También, nuestra decisión de que la sentencia en el caso sobre impugnación de legitimidad es nula, no elimina la demanda en dicho caso. En su consecuencia, los

herederos de Frank Chaulón o uno de ellos, de así optarlo, pueden continuar el pelito sobre impugnación de legitimidad que inició Frank Chaulón. O dichos herederos o alguno de ellos puede iniciar un nuevo pleito impugnando la legitimidad de Zoilo E. Chabrán. Pero, de cualquier modo, como ya se ha indicado, Zoilo E. Chabrán sería una parte demandada indispensable. Y suponemos que la madre admitiría, según lo admitió en su contestación en el pleito original sobre impugnación de legitimidad, que de hecho el menor no era legítimo debido a la imposibilidad física de acceso a ella por parte de su marido durante el período crucial.(⁹) Bajo dichas circunstancias, sería la mejor práctica para el tribunal sentenciador nombrarle al menor un defensor judicial más bien que permitirle a la madre que lo represente, en vista del posible conflicto bajo dichas circunstancias de intereses de la madre y del menor. Véase la Regla 17(f) de las de Enjuiciamiento Civil y *Biaggi* v. *Corte,* supra. Y para evitar la posible contención de que una sentencia basada en hechos admitidos en la contestación era en efecto una transacción en relación con el *status,* en violación del artículo 1713 del Código Civil, la corte sentenciadora debe recibir testimonio sobre las cuestiones en controversia en el caso y llegar a conclusiones de hecho basadas en el mismo.(¹⁰)

▉▉ ▉▉ No hemos pasado por alto la posibilidad de que en cualquier pleito futuro sobre impugnación de legitimidad,

---

(⁹) Según dijimos en *Cubano* v. *Del Valle,* 69 D.P.R. 579, 581, nuestro Código no tiene el artículo 109 del Código Civil español, que prescribe que "el hijo se presumía legítimo, aunque la madre hubiese declarado contra su legitimidad o hubiese sido condenada como adúltera." Pero las alegaciones y la evidencia deben limitarse a demostrar la imposibilidad física de acceso por parte del marido. Prueba de adulterio por la esposa no es admisible. *Cubano* v. *Del Valle,* supra.

(¹⁰) Véanse *Ex parte Morales,* 17 D.P.R. 1043; *Ex parte Santiago et al y El Pueblo,* 21 D.P.R. 377; *Valdés* v. *Hastrup,* 64 D.P.R. 595, 599; *Rivera* v. *Sucn. Díaz Luzunaris,* 70 D.P.R. 181, 194-96, y opinión concurrente, págs. 211-12. Cf. *Pagán* v. *Sucn. Padilla,* 42 D.P.R. 968.

los demandados pueden alegar que la causa de acción está prescrita. Al decidir la moción de sentencia sumaria, la sección de Humacao no pasó sobre la contención héchale por el demandado, que no se ha renovado ante nos por el demandado en esta apelación, de que la causa de acción en el pleito de filiación ha prescrito. Tampoco hemos pasado sobre dicha cuestión, ya que la regla es que aun cuando apareciera de las alegaciones que la acción pudiera estar prescrita, una sentencia no puede ser atacada colateralmente por ese fundamento. Pueden haber existido varias razones, incluyendo la de renuncia, por las cuales el tribunal que dictó la sentencia resolvió que no era aplicable la defensa de prescripción. *Herron* v. *Dater*, 120 U.S. 464, 477; *Palmer* v. *Board of Chosen Freeholders*, 71 Atl. 285 (N.J., 1908); *Head* v. *Daniels*, 15 Pac. 911 (Kans., 1887). Véanse también, por analogía, *Colt* v. *Colt*, 111 U.S. 566; *Associated Oil Co.* v. *Mullin*, 294 Pac. 421 (Cal., 1930); *Schodde* v. *United States*, 69 F. 2d 866 (C.A. 9, 1934); *Capper* v. *Short*, 11 S. W. 2d 717 (Ky., 1928).

Ya que hemos discutido otros aspectos de la litigación que concebiblemente puede surgir en el futuro en relación con una impugnación de la legitimidad de Zoilo E. Chabrán en el caso pendiente sobre impugnación de legitimidad o en un nuevo caso, debemos añadir que el curso a seguir sobre la cuestión de prescripción, sobre la cual no expresamos opinión alguna, debe ser decidido exclusivamente por las verdaderas partes interesadas. *Cf. Fuentes* v. *Tribunal de Distrito*, supra; *Meléndez* v. *Iturrondo*, supra; *Bithorn* v. *Santana*, 68 D.P.R. 300. Por ejemplo, suponemos *arguendo* que el término prescriptivo ha expirado. Aun bajo dichas circunstancias toca al defensor judicial de Zoilo E. Chabrán determinar si se cumplirían mejor los intereses del menor renunciando a la prescripción. Esta es una cuestión sobre la cual Zoilo Méndez no puede ser oído en el caso sobre im-

pugnación de legitimidad. Aun cuando éste radicara una moción de intervención en dicho caso y le fuera declarada con lugar, podría Méndez intervenir a lo sumo para evitar una conclusión, que no es apropiada en el caso sobre impugnación de legitimidad, al efecto de que él es el padre del menor. Méndez quizás podría tener derecho a alegar que dicha cuestión no debe adjudicarse en el pleito sobre impugnación de legitimidad. Véase *Cubano* v. *Del Valle*, supra. Pero no puede intervenir en la verdadera cuestión ante el tribunal, la legitimidad del menor, incluyendo tales cuestiones como si el derecho del marido o de sus herederos legítimos a impugnar la legitimidad está prescrito, o si los demandados pueden renunciar a tal defensa de prescripción. [11]

*Por los motivos expuestos, se confirmará la sentencia de la sección de Humacao del anterior tribunal de distrito declarando con lugar la moción del demandado para que se dictara sentencia sumaria en el presente recurso de filiación.*

---

[11] El tribunal sentenciador manifestó en un escolio: "Los hechos alegados en la demanda de impugnación de legitimidad no son suficientes para constituir causa de acción. No se alega la imposibilidad física del marido para tener acceso con su mujer dentro de los 120 días de los 300 que precedieron al nacimiento del hijo. Esa omisión no la suple la contestación, por lo que dudamos seriamente de la corrección de una sentencia *por las alegaciones* en los términos en que está redactada la dictada por la Sección de San Juan. No habiéndose recibido prueba alguna, no vemos cómo pueda llegarse a conclusiones que no están sostenidas por las alegaciones. No obstante, creemos que dicha sentencia no puede atacarse colateralmente, aunque sí directamente por ese fundamento. ..."

No expresamos comentario alguno sobre esto, excepto para decir que si los herederos legítimos de Frank Chaulón o uno de ellos prosigue más luego con el pleito actual sobre impugnación de legitimidad en la sección de San Juan o radica uno nuevo, la cuestión de si la demanda aduce hechos constitutivos de causa de acción será una a determinarse por el tribunal de serle suscitada por los demandados.